# IN RE APPLICATION OF SNYDER.

### PATENTS; TEACHING CHART.

1. A decision of the Commissioner of Patents rejecting two claims in an application for a patent for a "teaching chart," for the reason that while the applicant's device was not anticipated in certain references cited the requisite element of invention was lacking in view of such references, *reversed* upon the ground that the result reached by the applicant indicated that degree of thought which rises to the dignity of invention.

2. An invention to be patentable must extend beyond the merely novel and useful into the domain of original thought; but the extent of the mental thought is immaterial.

No. 51. Submitted November 9, 1896. Decided January 5, 1897.

HEARING on an appeal by an applicant for a patent from a decision of the Commissioner of Patents rejecting certain claims in the application. *Reversed.*

The facts are sufficiently stated in the opinion.

*Messrs. Pennie & Goldsborough* for the appellant.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Justice BRADLEY, of the Supreme Court of the District of Columbia, who sat with the court in the hearing of

this cause in the place of Mr. Chief Justice ALVEY, delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents rejecting two of the claims in an application of the appellant for letters patent.

The invention is denominated a "teaching chart," for use in schools in the instruction of young children. It is described as consisting of a number of leaves held together at their upper edge by a binder of suitable construction, which is provided with an appliance for hanging the chart upon a wall or to a proper frame or stand. Some one or more of these leaves are entire and contain printed or written words or reading matter. Others are divided crosswise of the reading lines, and the printed or written matter is so arranged that when certain sections of the same leaf are brought into sidewise registration with each other or with sections of other leaves the words exposed in reading line will form a sentence or make sense. The object is stated to be to counteract the tendency of young children to memorize locality and sequence rather than words, and by changing subjects, objects, and verbs in the turning of parts of the slitted leaves, thus substituting a new subject, object, or verb, to compel the pupil to learn words from their individuality rather than from their locality or association.

The appellant asked the allowance of the following claims:

"1. A chart or book comprising a plurality of slitted sectional leaves bound together at one edge, and containing words or reading matter, the slit or slits of one leaf registering with those of all the other leaves, whereby when one or more sections of one leaf are turned up the reading matter thus exposed on the section or sections of the underlying leaf will be in reading registration with the matter contained on the unturned portion of the leaf first mentioned.

"2. A chart or book comprising a plurality of leaves containing reading matter and bound together at their upper

ends, each of said leaves being slitted or divided vertically or crosswise of the reading lines to form sections so that any section of one leaf may be turned independently of the other section of the same leaf to bring the reading matter of one or more of said other sections into reading registration with the reading matter on the leaf-section below said turned or raised section.

"3. As an article of manufacture, a chart or book comprising one or more entire or undivided leaves containing words or symbols, and a plurality of slitted or sectional leaves, all of said leaves being bound together at their top edge, and said slitted leaves containing words or reading matter, the slit or slits of one leaf registering with those of all the other slitted leaves, whereby when one or more sections of one slitted leaf are turned up the reading matter thus exposed on the section or sections of the underlying leaf will be in reading registration with the matter contained on the unturned portion of the slitted leaf first mentioned; substantially as described."

The third claim was allowed. The others were rejected, as anticipated by patents to Gilmore, dated May 10, 1892, No. 474,732; Robertson, October 2, 1883, No. 286,152; British patent No. 17,105 of 1890, Bean, and a Japanese picture puzzle.

The Gilmore patent is for an invention having the same object as that of appellant. The inventor uses a frame containing a number of vertical belts or bands stretched tightly upon rollers, the belts being arranged side by side and each one operated by a turning-knob located at one side of the frame. Upon these belts strips bearing printed words or figures are buttoned. Some of the strips contain the verbs, others the subjects or objects. By turning the knobs the strips are adjusted in reading relation, so that sentences are formed, any word of which can be changed by raising or lowering the belt with the strip bearing the word. Each strip contains a limited number of words. Increasing the

variety of subjects, objects, or verbs is accomplished by add-
ing to the number of strips and by the removal and substi-
tution of the one for the other. This invention is involved
in much mechanism liable to get out of order. It is com-
plex in manipulation.

The Acting Commissioner of Patents says of this reference
in his decision:

"It shows a reading-chart *the face of which is slitted cross-
wise of the reading-lines.*"

This appears to be inaccurate. The reading-chart is com-
posed of a series of adjustable belts, to which are buttoned
removable strips containing words. Each strip is distinct,
composing an element of the chart only when placed in its
position upon an adjustable belt of the machine. The ex-
pression quite as aptly could be applied to separate letter or
word blocks arranged in juxtaposition to form words or sen-
tences.

The appellant has accomplished the object sought by Gil-
more in a more simple, complete, cheap and useful manner.
The means used are entirely different and the operation is
totally dissimilar.

Of the other references, the Robertson patent is for two
complete books bound in one cover, one containing words and
the other tunes for hymn-singing, the purpose being that
given words and a given tune may be brought the one above
the other for simultaneous use, thus obviating the incon-
venience of handling two books.

The subject-matter of the British patent is sufficiently in-
dicated by the claims which read:

"1. Making children's story and like books with illustra-
tions on side leaves foldable to a center and affixed to a
cover.

"2. Illustrating both sides of foldable leaves, the outer
edges of which meet when folded inwardly so that any two
leaves when so folded present a picture of an amusing char-
acter."

This reference does not appear to be relied upon by the acting Commissioner.

The Japanese puzzle-picture is very similar in character and purpose to the British patent. It consists of four sets of leaves, each set secured at one edge to a stiff back, so that the lines of the secured edges form a square or rectangle, and opposite leaves, each of which contains a half-picture, fold toward each other, meet edge to edge at a central line, and form completed pictures. Its primary object is not apparent, but amusement and entertainment evidently enter into its purpose. The only feature common to this puzzle-picture and to appellant's invention is the binding together at one edge of each set of leaves—a common expedient, centuries old.

It is conceded that appellant's device is not anticipated in any one of the references; that it is novel and useful; but it is claimed that in view of these references the requisite element of invention is lacking, and that therefore it is not patentable. Just where the line of invention lies in an accomplished result is frequently difficult for the courts to determine. That it must extend beyond the merely novel and useful and into the domain of original thought has been determined. The extent of the mental process, however, is immaterial. The result may come out of long consideration, or it may be the revelation of a flash of thought.

Appellant's invention, viewed from the standpoint of achievement, appears so simple that it may be difficult to put finger upon the precise point at which the inventive faculty was exercised; yet it appears to us to be clear that the result, considered with the references cited in support of the rejection of the application, indicates that degree of thought which rises to the dignity of invention.

"The apparent simplicity of a new device often leads an inexperienced person to think that it would have occurred to any one familiar with the subject; but the decisive answer is that, with dozens and perhaps hundreds of others laboring

in the same field, it had never occurred to any one before."
*Potts* v. *Creager*, 155 U. S. 608.

The rejected claims should have been allowed, and therefore the decision of the Commissioner of Patents is *reversed, and this decision and the proceedings in the cause shall be certified to the Commissioner of Patents.*