## CORSER v. BRATTLEBORO OVERALL CO.

(Circuit Court, D. Vermont. April 1, 1899.)

**1. PATENTS—INVENTION.**

Overalls with an upward extension or bib in front being old, there is no invention in making a similar upward extension of about the same height at the back, for the purpose of excluding dust and cinders, and permitting the use of short suspenders, which require no crosspiece to prevent them from slipping from the shoulders.

**2. SAME—OVERALLS.**

The Corser patent, No. 366,621, for an improvement in overalls, is void as to claim 3, for want of invention.

This was a suit in equity by Brackett G. Corser against the Brattleboro Overall Company for alleged infringement of a patent for an improvement in overalls.

James L. Martin, for plaintiff.

Kittredge Haskins and William E. Simonds, for defendant.

WHEELER, District Judge. This suit is brought upon letters patent No. 366,621 applied for November 12, 1886, dated July 12, 1887, and granted to the plaintiff for an improvement in overalls. The patent covers several different features by various claims. All of it that relates to the one in question is in the specification:

"At Figs. 3 and 9 I have represented a portion of the rear of a pair of overalls; the customary style being indicated in dotted lines, and an improvement in full lines. The back is extended upwardly about as high as the

usual height of a bib. This excludes cinders and dust. The suspenders are shorter, and no crosspiece is required to prevent them from slipping from the shoulders."

And among the claims is:

"(3) A pair of overalls provided with a back piece extending substantially above the waistband, with suspenders fastened to said back piece, substantially as specified, whereby the customary strap connecting the suspenders is dispensed with, and a means of protecting the back immediately below the shoulder blades, and excluding cinders, is afforded."

The figures referred to show the extension upward, with suspenders from the corners to go over each shoulder without crossing, or having any crosspiece. Overalls with such an extension upward in front, to which the suspenders were buttoned or buckled, were old, within common knowledge; and this extension was recognized in the patent as a bib. That what were called "railroad overalls," having something of such an extension upward, had been made before the plaintiff's invention, well appears from the evidence, and appears to be recognized by the plaintiff in his rebutting testimony. In his answer to direct interrogatory 19, he appears to have said, in describing how the then existing style was cut:

"The overall would then be marked out, and the back, like the 12 overall that they were then making, would not come up so high as the fold of the cloth came; and the difference which I made between this and that is that the back does come up as high as the front. Because the back did not come up as high, they got the straps out of the web. By adding on some four or five inches onto the height of the back, * * * adding it onto the 12, * * * I could make the straps four or five inches shorter, and get the straps out between the legs."

On cross-examination as to this he appears to have testified:

"(135) And was not that a high-back railroad overall? It was not as high back as Exhibit 2 or Exhibit Q. (136) Was it not called a 'high-back overall'? I never heard it called so. (137) Was it not cut with a high back? My remembrance is, it was cut like one of these exhibits here. (138) Was it not an overall having a back extending above the ordinary waistband? It was one like Exhibit 12."

The back of the alleged infringement extends upward about four inches from the waistband, and has wide suspenders, which fill the upper side of the extension, cross, and are fastened together at about the height of the bib, and go over the shoulders, without any crosspiece, making a tight back up to about the shoulder blades, where the suspenders cross, and above, to where they separate, and of the width of one suspender where they cross, of both where they separate, and of both where they are attached to the upward extension of the back. Suspenders, wide, as well as otherwise, crossed to keep them on the shoulders, and fastened together where they cross, were old and well known. Thus, this supposed infringement appears to be like the prior railroad overalls, with crossed wide suspenders attached to the upper side of the back extension. The suspenders do not leave the back extension at the corners to go over the shoulders separately, unless the whole is considered as back extension all the way up to where the suspenders separate. As overalls, and overall backs and fronts, and suspenders, wide and otherwise, were all old, the plaintiff could have

a valid patent only for his specific improvements upon them in these respects. Railway Co. v. Sayles, 97 U. S. 554. In that case Mr. Justice Bradley said:

"If one inventor precedes all the rest, and strikes out something which includes and underlies all that they produce, he acquires a monopoly, and subjects them to tribute. But if the advance towards the thing desired is gradual, and proceeds step by step, so that no one can claim the complete whole, then each is entitled only to the specific form of device which he produces, and every other inventor is entitled to his own specific form, so long as it differs from those of his competitors, and does not include theirs."

The plaintiff's improvement here consisted in making the back higher. The alleged infringement consists in using wide, crossed suspenders. If his improvement could be said to cover extending the back of the overalls upward as high as the bib for the protection of the back of the wearer, the extension would be like the bib at the front, and would be merely putting that device to the same use, in a new place, in the same garment, for the same purpose. Such putting to a new use does not constitute patentable invention. The cases to this effect in the supreme court of the United States are too numerous for citation in detail, and this principle of patent law is too well settled to justify it. In Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, several of these cases were examined, and Mr. Justice Brown said:

"As a result of the authorities upon this subject, it may be said that, if the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use, but if the relations between them be remote, and especially if the use of the old device produce a new result, it may at least involve an exercise of the inventive faculty."

As soon as the want of a high back, as well as a high front, should be felt, the exercise of mechanical skill, without inventive genius, would provide it. The plaintiff appears to have exercised good judgment and high skill about this, but not inventive genius or faculty in construction or discovery. And, with high backs to any fair extent, the making them higher would be merely carrying forward the same idea, although to a result more perfect, and would not seem to be patentable. Wright v. Yuengling, 155 U. S. 47, 15 Sup. Ct. 1.

These considerations make the examination of other questions urged unnecessary. Bill dismissed.