### SAN JOSE CANNING CO. v. ONEAL.

(Circuit Court of Appeals, Ninth Circuit. January 18, 1926. Rehearing Denied February 23, 1926.)

No. 4668.

Patents ⬳328—1,235,680, claims 4, 5, for device for preparing string beans for canning, held valid and infringed, but claims as to method held invalid.

Greco, No. 1,235,680, claims 4, 5, for device for preparing string beans for canning, *held* valid and infringed, but claims as to method of canning *held* invalid.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Suit by Louis Oneal against the San Jose Canning Company. Decree for plaintiff, and defendant appeals. Affirmed in part, and reversed and remanded, with directions, in part.

R. M. J. Armstrong, of San Francisco, Cal., for appellant.

Preston & Duncan, of San Francisco, Cal., for appellee.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

HUNT, Circuit Judge. This is an appeal from an interlocutory decree in favor of Oneal, and enjoining the San Jose Canning Company from infringing certain patent rights. Damages were also sued for. The company set up noninfringement, invalidity, and lack of invention.

Appellee's patent, No. 1,235,680, issued August 7, 1917, to Greco, assigned by him to Oneal, relates to a device and method of preparing string beans for canning. The strings are first removed from the beans, the beans are then blanched to make them pliable, and then are placed in bunch formation within a mold. The ends of the beans which project are cut off so as to secure uniformity. The beans in bunches are put into the can by inserting the end of the mold into the open end of the can, and then clamping the mold. A slight jar of the mold causes the beans to slip into the can. When the can is opened and the contents removed, the bunch of beans is substantially of uniform length. The mold has at one end an outwardly projected flange, which, when the guide end of the mold is inserted within the open mouth of the can, rests on the end thereof. The beans are put into the mold when open. The mold is then closed and a clamp lock lowered to engage the flanges and lock the mold. With the beans thus clamped, and the projecting ends cut away, the guide end of the mold is inserted within the open mouth of the can, and the clamp lock thrown upward to release and unclamp the mold. The mold is then slightly raised, and with a downward movement the flange impacts on to the end of the can, and causes the beans to slip from within the mold into the can.

Four claims of the patent are for method of canning beans. Two claims, 4 and 5, for the device, are as follows:

"4. A device for use in canning of beans and similar vegetables in bunch formation, the same comprising a mold for the reception of the vegetable to be canned, lock means for holding the mold in locked position, and an outwardly projected flange on the mold adjacent one of its ends.

"5. A device for use in the canning of beans, the same comprising a mold adapted to receive and encompass the beans in bunch formation, means for holding the mold in closed position, and an outwardly projected flange on the mold adjacent one end thereof adapted to contact with the end of the can."

Claim 6 reads as follows:

"6. The method of canning beans or similar elongated vegetables in bunch formation within an encircling mold, closing the mold to encompass the vegetables therein, applying one end of the mold to the open end of a can, causing the bunch of vegetables to pass endwise from within the mold into the can by the application of a slight jar or tap to the mold."

Appellant's contention is that its mold follows patent No. 1,464,829, issued August 14, 1923, to Rancadore and Pecoraro, for a device facilitating the canning or packing of vegetables, such as beans, asparagus, and the like. That device embodies an open-sided structure; the opening extending the length of the cylinder projected out on an obtuse

angle to the cylinder; on one side is a forked bracket. The forks are arranged parallel, and made to receive between them one end of a handle with an opening in the end of the handle or lever with an opening in the end of the two forks of the bracket, so that a bolt may be passed through the registering opening to connect the handle of the bracket. The handle is arranged transversely of the cylinder adapted to move radially thereof. Along the sides of the opening of the cylinder are curved guide plates. Each of the plates is slotted to receive the handle in order to align the plate with the opening of the cylinder. The beans are placed through an opening of the sides of the cylinder, being arranged in parallel position. The handle is then clasped by the hand and brought down, so the plate will impart a pressure to the beans to pack them in the cylinder. The beans which protrude are then cut beyond the open ends of the cylinder and the operator puts the device over the open end of the can. The diameter of the cylinder is less than the diameter of the can, so that the end of the cylinder telescopes with the open end of the can; the telescope action being limited by the bands with adjacent opposite ends of the cylinder acting as abutments. When the cylinder has been placed over the end of the can a jar of the can will transfer the beans from the mold to the can.

Appellant's combination is practically the same as appellee's. Use of a flange which protrudes from the cylinder is not materially different from appellee's flange, which runs around the mold. In both the purpose of the flange is to prevent the mold from dropping too far into the can. Nor does the use of a different form of lock means to close appellant's mold avoid infringement. Both the devices encompass the beans in bunch formation; both have means for holding the mold in closed position; both have outwardly projecting flanges on the mold adjacent one of the ends thereof, adapted to contact with the ends of the can. We can see no resulting difference in the modes of operation.

Appellant introduced a device as anticipatory of the claims of the patent in suit, a cigarette mold in which tobacco is laid lengthwise in a small hinged cylindrical piece of brass. A plunger is used to press the tobacco down, in order to enable the cylinder to be closed. The empty cigarette tube is then put on top of the cylinder, and the tobacco pushed into the tube. The marked difference between the cigarette mold and the mold of appellee is that, in the one there are no flanges to prevent the filler from entering the tube, nor is there a clamp or lock used to make the mold stay closed. Apparently, too, in making cigarettes, it is not necessary to use means to prevent the breaking of the tobacco, while in the canning of beans it is most desirable that means be employed to keep the beans in lengthwise and whole.

Reference was also made to a mold that was used in 1913 and 1914 for packing asparagus at Manlius, N. Y. The mold was simply a plain cylindrical piece of metal, with about one-quarter of the cylinder cut out. The asparagus was laid in the cylinder horizontally, and when a sufficient quantity was put in, the cylinder was taken up by hand, the hand being held over the open space of the cylinder, which was rested upon the can, and the asparagus was jarred into the can. There is no hinge upon the mold; nor is there any means of clamping the two sides together, so as to hold the asparagus while the ends are being cut off and until the vegetable is finally deposited in the can.

No other disclosure bore close enough relationship to the patent in suit to call for special comment, and while it may be that a cylinder like that used in the packing of asparagus could be altered and added to, so as to perform the same function as does appellee's device, still the new use of the appellee's device has produced results which did not occur to one of ordinary mechanical skill, and it has met a need. In Potts v. Creager, 155 U. S. 597, 15 S. Ct. 194, 39 L. Ed. 275, the court said: "If the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and especially if the use of the old device produce a new result, it may at least involve an exercise of the inventive faculty."

But we see no merit in the claims for the method of canning beans by arranging them in bunch formation, with an encircling mold, then placing one end of the mold in contact with the open end of the can, causing the beans to move from the mold into the can. Such a process amounts to nothing more than the obviously necessary manner of operating the mechanism. Risdon Locomotive Works v. Medart, 158 U. S. 68, 15 S. Ct. 745, 39 L. Ed. 899; Vapor Car Heating Co. v. Gold Car H. & L. Co. (C. C. A.) 7 F.(2d) 285.

The result of these views is that the decree of the District Court is affirmed, in so far as it decrees in favor of appellee, sustaining the validity of claims 4 and 5 of the patent to Greco, and adjudges that those claims

have been infringed by the San Jose Canning Company, and in so far as it orders a reference to take an account in profits and damages in respect to such infringement. In so far as the decree sustains the validity of the other claims of the patent, it is reversed, and the injunction with respect to such other method claims must be dissolved. Upon remand, the District Court is directed to take such proceedings as shall be according to law, and not inconsistent with this opinion.

Affirmed in part, and reversed in part. Costs on this appeal to be equally divided.