LORAIN STEEL CO. v. WHITE MFG. CO.

(Circuit Court of Appeals, Second Circuit.   January 9, 1911.)

No. 46.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—RAILWAY SWITCH STRUCTURE.
   The Moxham patent, No. 536,734, for a railway switch structure, claim
   1, is void for lack of invention.   Claim 6, conceding it valid as showing
   invention, must be limited to the precise structure described.   As so
   limited, *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern
District of New York.

Suit in equity by the Lorain Steel Company against the White Man-
ufacturing Company.   Decree for defendant (158 Fed. 413), and com-
plainant appeals.   Affirmed.

On appeal from a decree of the Circuit Court for the Southern
District of New York dismissing the bill of complaint which was
founded upon claims 1 and 6 of letters patent No. 536,734, granted
April 2, 1895, to Arthur J. Moxham for an improvement in railway
switch work.

The opinion of the Circuit Court was filed December 30, 1907, and
is reported in 158 Fed. 413.

Linthicum, Belt & Fuller (Charles MacVeagh, Charles C. Linthi-
cum, and D. Anthony Usina, of counsel), for appellant.

H. D. Donnelly, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge.   The Moxham patent in suit relates to frogs,
mates, crosses or similar structures in railway tracks in which the
part subject to most wear may be made more durable than the other
parts of the switch-pieces and easily removable therefrom.

The crossing points of the two rails is subject to greater wear than
the rest of the track and is a source of much trouble and expense.
The object of the patentee was to provide a switch-piece in which is
inserted at the point of excessive wear a plate of more durable quality
than the remainder of the track and one which may easily be removed
for realignment or replacing.   The central portion of the frog is cast
with a pocket adapted to receive the more durable plate which may
be forged, rolled or cast.   The central casting has formed upon it
short projections conforming to the shape of the abutting rails and
in alignment therewith.   To these projections the abutting rails are
secured.

The plate may be secured in place in the pocket by the following
method.   In the bottom of the plate, bolts, having washers at their
lower ends, are screwed.   Around the inside of the pocket is a ledge.
After the plate is placed in the desired position the space beneath it is
filled with cement or some similar substance which will flow around
the bolts and bond the whole in place, the ledge holding it in position.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plate can be removed easily by applying force sufficient to break the bonding material.

The claims in issue are the first and sixth. They are as follows:

"1. A railway switch structure which consists of a metallic structure provided with a pocket in which a plate is grooved so as to form the flangeway and point is removably secured, the rails of the remainder of said switch being secured to said metallic structure."

"6. A railway switch piece consisting of a body portion having a pocket adapted to receive a plate, a plate in said pocket having track surfaces and depending holding down members, projecting downward from the plate into the space beneath, said space below the plate being filled with a material adapted to support the plate and bond the holding down members substantially are described."

This patent was before the Circuit Court of Appeals of the Sixth Circuit in Johnson Co. v. Toledo Traction Co., 119 Fed. 885, 56 C. C. A. 415. Three of the patent drawings are there reproduced and the essential features of the description are quoted. The claims involved were the first five, which were held invalid for lack of invention, the court conceding that the claims were not anticipated as the Moxham device was not shown by any structure of the prior art. It held, however, that when the demand for a removable wearing center became general, owing to the tremendous growth of electric railways, it required only the skill of the mechanic to produce such a structure. The two claims of patent No. 540,796 to Moxham were also involved in the decision of the Sixth Circuit. This was a patent for the method of retaining the switch plate in the pocket by pouring in molten zinc, or other soft retaining metal, in the space between the plate and the walls of the pocket.

The first claim of this patent sufficiently describes the invention and is as follows:

"1. A railway switch structure comprising a body portion having the diverging rails secured thereto and having a pocket adapted to receive a plate, a plate in said pocket having flangeways and the point formed thereon and a retaining material between the plate and sides of said pocket whereby the plate is held in position in said pocket."

Speaking of this patent the court says:

"It is abundantly shown that in various branches of machine and foundry work soft retaining metal has been long used as a cheap device for fastening parts together and also for holding parts in alignment."

The court reached the conclusion that, at best, Moxham used a well known method of securing two parts rigidly together in such a manner that they might be separated without being destroyed. That although the particular parts had not been previously so fastened, it did not require an exercise of the inventive faculty to use an old and well known retaining material for this purpose. In other words, the fact that the parts had never before been so fastened did not impart novelty to the old method of fastening. The court, citing Potts and Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275, says:

"It is merely the case of a new use, without any change in the method of using the old element to adapt it to the new use or any new mode of application."

The Circuit Court for the Northern District of Ohio, and the Circuit Court of Appeals for the Sixth Circuit having held that the first claim of the patent here in suit is invalid, we think that an orderly administration of the patent law demands that we should follow these decisions unless clearly persuaded that they are erroneous. We are not persuaded. The claim is a broad one designed to cover any metallic switch structure, provided with a pocket in which a grooved plate is removably secured, the rails of the remainder of said switch being secured to said metallic structure. We are not prepared to hold, in view of the prior art, that it involved invention to produce such a structure.

The sixth claim of the patent in suit remains to be considered. Though this claim was not involved in the Ohio action, the two claims of No. 540,796 were involved, and the language of the court, as we have seen, is as applicable to the claim now under discussion as to those which the court was considering. It cannot be doubted that the court was of the opinion that the use of any well known retaining material for fastening the parts together and holding them in position involved not invention, but mechanical skill only.

In the case of Lorain Steel Co. v. Barbour-Stockwell Co., 170 Fed. 79, 95 C. C. A. 361, the Circuit Court of Appeals for the First Circuit had the Moxham patent No. 539,878 under consideration. The court says:

"The particular arrangement described for uniting and securing the structural connection between the hardened center piece and the rails through a scheme for a shrinkage grip under the cooling process of a separate body of molten metal poured into the mould which surrounds the center plate and rail ends, thus firmly uniting the whole together without the external fastenings of bolts and plates, taken in connection with the idea of presenting a solid center piece with a hardened surface, involved invention of some degree of merit, and as such entitled to protection commensurate with the degree of the actual invention involved."

We would find little difficulty in agreeing with this statement were it applicable to the claim we are now considering. This claim (the sixth of No. 536,734) is for a railway switch piece having the following elements:

First.—A body portion having a pocket adapted to receive a plate.

Second.—A plate in said pocket having track surfaces and depending holding down members projecting downward from the plate into the space beneath.

Third.—The space below the plate being filled with a material adapted to support the plate and bond the holding down members.

It will be observed that nothing is said in the claim as to the general plate being harder than the body portion. Indeed, the complainant's expert expressly disclaims the idea:

"That Moxham was the first man to suggest a railway switch structure provided with a wearing piece, inserted at the point of intersection or crossing, harder than the rest of the casting."

Manifestly, invention cannot be predicated of this feature. It is possible that it involved invention to secure the plate to the body portion by the use of depending members, the space below the plate being

filled with material adapted to support the plate and bond the holding down members. But the defendant does not use this method, if the claim be limited, as we think it must be, to what is described and shown. The defendant's structure is a "crossing"; it does not have the downwardly projecting members of the patent, viz., the bolts having washers at their lower ends, and the space beneath the plate is not filled with cement, melted sulphur or a similar substance which is fractured and broken up when sufficient force is applied to pull up the plate.

The defendant's structure, in principle and operation, is substantially similar to the alleged infringing structure in the Ohio case. The central plate is cut away at its ends so that about half of the end wall is vertical and below this portion the plate is cut away so as to form under-cut shoulders. The space below the plate and between it and the body portion is filled with molten cast iron, babbitt metal or spelter. Such metal would, it seems, not be broken up and disintegrated by the lifting strain as described in the patent.

Even if it be assumed that the sixth claim is valid as showing a limited invention, we think it must be confined to what the patentee describes, and, as so limited, the defendant does not infringe.

The decree is affirmed.