In re VOORHEES.

Patent Appeal No. 2321.

Court of Customs and Patent Appeals.
May 26, 1930.

Byrnes, Townsend & Brickenstein, of Washington, D. C. (C. H. Potter, of Washington, D. C., and E. L. Greenewald and H. D. Hineline, both of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the Patent Office, affirming the decision of the Examiner who rejected all of the claims of the application, with the exception of claim No. 9, which is not before us. The claims on appeal are 1 to 8, inclusive, and 10 to 15, inclusive. Claims 1 and 11 are illustrative, and read as follows:

"1. A flashlight comprising the combination of a tubular body, a lens-carrying and reflector-enclosing head at one end of said body, a cap coupled to and closing the other end of said body and detachable from the cap having a circular groove within its bottom surface, and a semi-circular hanger hinged in said groove for suspending the flashlight, the hanger being also foldable into either half of the groove, to avoid rendering the flashlight unstable when the latter is supported upright upon said cap as a base."

"11. A bottom cap for a tubular flashlight, such cap having an exterior groove therein, a hanger hinged in said groove, and means adapted to releasably retain said hanger in said groove."

The invention in issue, as disclosed by the application, consists of a flash-light with a tubular body, upon the rear end of which is a cap. This cap is the only part of the flash-light that is involved herein. It is threaded, and is designed to screw on to the rear end of the tubular casing. On the outside of said cap, on the flat surface constituting the end of the flash-light, a circular groove is impressed, said groove being close to the periphery of said cap. There is hinged in the cap a semicircular hanger or loop which is designed to be extended from the flash-light for the purpose of suspending it from a nail or other support. This hanger is so designed that it can be folded into the aforementioned groove in the cap. When so folded, no part of said hanger projects beyond the flat surface of the cap, thereby leaving the cap perfectly flat to be used as a base, if it be desired to stand the flash-light upright on said cap. When the hanger is thus folded, it is held in said groove by two groove detents. The aforementioned groove necessarily results in a raised bead on the inner surface of said cap. The application recites that this bead is utilized for two purposes: First, it is said to form a seat within which to confine the lower end of the spring which operates to keep the batteries pressed forward in the flash-light and in contact with the bulb; second, the tubular casing, besides being threaded to receive the said cap, also has longitudinal slots cut in it to permit of expansion of said casing; the bead on the inner surface of said cap operates, it is claimed, to expand the casing as the cap is screwed on to it, thereby maintaining a pres-

sure between the threads on the cap and those on the casing.

As before stated, the Examiner and the Board of Appeals of the Patent Office rejected all of the claims on appeal, the following references being cited: Norton, 235280, Dec. 7, 1880; Pendleton, 590907, Sept. 28, 1897; Robinson, 960109, May 31, 1910; Tyler, 1007404, Oct. 31, 1911; Sagebrecht, 1187555, June 20, 1916; McGuckin, 1211465, Jan. 9, 1917; Benedict, 1315457, Sept. 9, 1919; Voorhees, 1388622, Aug. 23, 1921; Schmuttermayer (German), 248818, July 3, 1912; Societe Willocq (French), 524122, May 7, 1921.

In its decision rejecting the claims in issue, the Board of Appeals said:

"Appellant's former patent No. 1,388,622 discloses a construction in which the cap member is screwed on threads provided on the end of the tubular casing and in which the latter has longitudinally extending slots at its end portion, and the cap is so shaped as to press the end portion of the tubular member outwardly to cause the threaded portions to have firm engagement.

"The patent to Sagebrecht shows the general organization including the lens-carrying and reflector-enclosing head at one end of the tubular member and a threaded cap at the other end of this member. It also shows the usual battery supporting spring resting on the inner surface of the cap.

"The German patent to Schmuttermayer discloses that it is old to provide a supporting ring on the cap member at the end of a flashlight remote from the lamp.

"The patent to Benedict discloses a flashlight of the flat type in which the supporting bail is held in folded position by means of an integral lug on the casing.

"The patent to Tyler discloses a portable electric lamp in which the bulb member is positioned within a casing as shown in Figure 1, or mounted above the casing as shown in Figure 2. In order to permit this change in position the bulb is mounted on a base having a bayonet connection with the upper end of the casing and which may be inverted. The lower surface of the base is provided with a depression in which a hanger is adapted to be folded. This hanger, which is in the shape of a hook, may be swung outwardly and used to suspend the bulb from the head of a bed. When the hook is folded into the depression in the cap the latter may be used as a supporting base. Obviously enough both of these methods of support, which are described in the patent, refer to the device when in use and not when enclosed in the casing.

"Several of the other references are not from the flashlight art but do show receptacle closures more or less closely approaching appellant's cap member in structure. Of these the French patent No. 524,122 discloses a cover which has threaded engagement with the upper end of a can and which is provided with a semi-circular shaped bail member that may be folded in either direction into a recess so that it will be located entirely below the upper plane of the cover. Integral lugs *h* are provided for holding the bail member in position. Also the patent to Norton discloses a can cover having a foldable bail member which is received in a circular groove adjacent the peripheral edge of the cover.

"The examiner has allowed claim 9 which includes the various features of appellant's construction. The claims on appeal however are more broadly drawn to some of the features of construction. Appellant urges, that the references disclosing covers for cans, etc. are non-analogous art and should not be used as a basis for rejection of his claims. These covers, like appellant's cap member, are closures for the ends of cylindrical containers. We believe appellant should not be permitted a claim which does not patentably distinguish his closure from that shown in the references. As stated above the patent to Schmuttermayer discloses the general combination and it is quite evident from the above discussion of the references that they disclose the different features recited in the claims on appeal with the possible exception of the use of appellant's bead member to afford lateral support for the lower end of the battery supporting spring. However if a cap or cover of the construction shown in Norton were used as a closure for the end of a flashlight the bead member there disclosed would support the spring in the same manner as in appellant's construction and we see nothing patentable in the broad provision of means for holding the end of the spring in position."

Appellant's principal contention is that all of the cited references relate to nonanalogous art, and are therefore not pertinent references.

The law as to nonanalogous prior patents anticipating an invention is very definitely stated in the case of Potts & Co. v. Creager, 155 U. S. 597, 15 S. Ct. 194, 198, 39 L. Ed. 275, where the court said:

"* * * If the new use be analogous to the former one, the court will undoubtedly

be disposed to construe the patent more strictly, and to require clearer proof of the exercise of the inventive faculty in adapting it to the new use, particularly if the device be one of minor importance in its new field of usefulness. On the other hand, if the transfer be to a branch of industry but remotely allied to the other, and the effect of such transfer has been to supersede other methods of doing the same work, the court will look with a less critical eye upon the means employed in making the transfer. Doubtless, a patentee is entitled to every use of which his invention is susceptible, whether such use be known or unknown to him; but the person who has taken his device, and, by improvements thereon, has adapted it to a different industry, may also draw to himself the quality of inventor. If, for instance, a person were to take a coffee mill and patent it as a mill for grinding spices, the double use would be too manifest for serious argument. * * *

"As a result of the authorities upon this subject, it may be said that, if the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and especially if the use of the old device produce a new result, it *may* at least involve an exercise of the inventive faculty. Much, however, must still depend upon the nature of the changes required to adapt the device to its new use."

Applying the principle declared in the above case, we find no error in the decision of the Board of Appeals.

The patent to Norton discloses a container cover having a foldable bail member which is received in a circular groove adjacent the peripheral edge of the cover. The device there disclosed is substantially the same as that of appellant; the only difference in principle being that the purpose of Norton was primarily the use of the device as a bail member for cans, while that of appellant is intended for a flash-light.

Norton's specification states that his invention "relates to improvements in sheet metal covers for cans, fruit jars and *metal packages*." (Italics ours.)

Broadly speaking, appellant's device relates to a cap and hanging member for a metal container forming a part of a flash-light. Norton's device relates to a cover or cap with a device similar to that of appel-

lant for any metal package in addition to cans and fruit jars.

While the art of making flash-lights is not analogous to the art of making cans, it must be remembered that, while appellant's device is described to be a part of a flash-light, it is in fact a cap and hanger or bail for a container of the battery used in the flash-light, and, when so considered, is not remote from the art to which Norton's patent related.

We think that, under all the circumstances, the Norton patent is a proper reference against appellant's claims.

The patent to Tyler discloses a portable electric lamp in which the base or cap has a recess into which a pivoted suspending hook may be folded down, so that, if desired, the cap may be used as a base. This patent also discloses the basic idea of appellant's device, and the subject-matter to which it relates is clearly not a nonanalogous art. His specification recites that "the lamp socket 5 is mounted on the cap 2 by means of the screws 5'. The opposite side of the cap is preferably provided with a suspending hook 6, which is pivoted at 7, so that it may be folded down into the recess 8 provided therefor in the cap. By means of this hook, the cap 2 may be suspended as from the head of a bed or any suitable support."

We do not deem it necessary to discuss the other references. It is sufficient to say that we think the decision of the Board of Appeals covers all of the questions involved in this appeal, and we find no error therein.

The decision of the Board of Appeals is affirmed.

Affirmed.