In re SKAUPY et al.

Patent Appeal No. 3174.

Court of Customs and Patent Appeals.

Dec. 4, 1933.

Frederick Transom, of Washington, D. C. (Thos. H. Brown, of Hoboken, N. J., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

This is an appeal from the Board of Appeals of the United States Patent Office rejecting claims 1 to 8, inclusive, of the application of the appellants for a patent on alleged improvements in "electric lighting tubes with carbonic acid filling." The decision of the Board of Appeals affirmed that of the Examiner.

Typical claims are 2 and 4, which are as follows:

"2. An electrical discharge device comprising an envelope, electrodes therein and a charge of attenuated gas comprising helium as the discharge maintaining gas and carbon dioxide, the radiation characteristic of said device being substantially that of the carbon dioxide.

"4. An electrical discharge device comprising an envelope, electrodes sealed therein, a gaseous filling for said envelope comprising a discharge maintaining rare gas and a gas having a radiation characteristic different from that of said discharge maintaining gas."

The claims were rejected on reference to British Patent 135,487, September 30, 1920, and British Patent 155,783, April 28, 1921.

The specification of the appellants recites that the alleged invention has reference to electric lighting devices of the Moore Tube type and particularly to lamps filled with carbon dioxide. The appellants use, as a tube filling, a mixture of carbon dioxide and one of the rare gases, preferably helium. A specially favorable tube filling is given as 0.1 mm. of carbon dioxide and 2.9 mm. of helium. This mixture, the appellants state, will give the light radiation of the common gas, while the excess of rare gases will facilitate the starting and maintenance of the electric discharge. The specification further recites:

"It is already known in the manufacture of electric glow light lamps to use a filling which besides rare gases has a small quantity of a base gas, also carbon dioxide. In this case, however, the positive column is suppressed by the close location of the electrodes and the quantity of base gas, for example carbonic acid, is intentionally chosen so slight, that it does not affect the color of the rare gas discharge but only prevents the atomization of the electrodes."

Both tribunals in the Patent Office were of opinion that the use of a mixture of common and rare gases as a filling for electric lamps was fully shown by the reference patents, and was well known in the art. The appellants admit this upon the oral argument as well as by their specification heretofore quoted. In addition, it is quite evident, from the specifications and claims of the British reference patents, that this is true, both reference patents showing plainly the use of such rare gases and base gases in substantially the proportions specified by the appellants.

There is, therefore, nothing inventive in the idea of using such a mixture of gases.

The appellants, however, contend that their claims may be differentiated from those of the British patents in two respects, first, that their mixture of gases is used with electric lamps of the Moore Tube type, while the British patentees do not so specify, and, second, "the radiation characteristic of said device being substantially that of the carbon dioxide."

An inspection of the claims of appellants shows that in no instance do they rely upon or mention that the mixture of gases must be used in an electric lamp of the Moore Tube type, nor do they, in any respect, claim any particular position of the electrodes in the same. Therefore, it appears that, so far as this feature is concerned, the appellants do not claim it, but state their claims so broadly as to apparently include any electric lamp using such gaseous mixtures as a source of illumination.

The tribunals of the Patent Office were of the opinion that the applicants had not disclosed any patentable feature by their statement, "the radiation characteristic of said device being substantially that of the carbon dioxide," in view of the fact that they used the same mixture as in the reference patents, and showed and claimed no material structural differences between their lamp and those of the reference patents.

This we find to be a correct statement. The British patentees used the same mixture of gases in the same proportions as those disclosed by appellants. Naturally, unless there were material structural differences in the lamps which they respectively used, the result of the transmission of electric current would be the same, in the quality of light radiated. If, in the ordinary use of the devices shown by the British patents, the same light characteristics would necessarily follow, then the British patentees are entitled to the benefit of their respective disclosures, and the appellants here cannot claim such a result as a patentable feature. Potts & Co. v. Creager, 155 U. S. 597, 15 S. Ct. 194, 39 L. Ed. 275; In re Smith, 36 F.(2d) 302, 17 C. C. P. A. 644; In re Watson, 44 F.(2d) 868, 18 C. C. P. A. 712.

It may be true that the appellants here have produced a result in radiation not heretofore known to the art. If so, as properly remarked by the tribunals of the Patent Office, it is by virtue of some novelty of construction which is not claimed by the appellants. So far as this record shows, they have claimed only a function of devices well known to the art.

A somewhat similar case is In re Hammond, 37 F.(2d) 760, 17 C. C. P. A. 803. There, the applicant disclosed a torpedo structure, adding to the claims this language: " * * * Means being operative to hold the rudder in such port or starboard position until the vessel encounters a current." This, it was argued, would move the torpedo back and forth until it would strike the vessel at which it was aimed. A reference patent disclosed a similar device. This court held that while applicant's torpedo might function as claimed, so might the device of the reference patentee, and, there being no recitation of structural details to differentiate the device of applicant from the patentee, the applicant must be held to be attempting to patent a function only, which could not be done.

The decision of the Board of Appeals is affirmed.

Affirmed.