22 C. C. P. A. (Patents)

### In re EDMONDS.

### Patent Appeal No. 3498.

Court of Customs and Patent Appeals.
June 3, 1935.

A. Miller Belfield, of Chicago, Ill. (Milans & Milans, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant has presented an application to the United States Patent Office for a patent on a certain claimed new and useful improvement in pothead devices. Claims 2, 5, 6, 10, 11, 12, 13, 15, 16, 17, 22, 23, and 25 were rejected by both the examiner and the Board of Appeals.

The claims may be roughly divided into two classes. The first class includes all but claims 22 and 23, which are included in the second class. Claims 2 and 23 are illustrative, and follow:

"2. In a device of the character described, the combination of a tubular insulator member adapted to receive a cable therein and provided with an annular shoulder at one end, an annular connecting member adapted to be slipped over said end past said shoulder, an annular contractible member also adapted to be slipped over said end to engage said shoulder and prevent the withdrawal of said connecting member, a fitting on the end of said insulator member adapted to be connected to said connecting member, and means for drawing said fitting and connecting member together for attaching the fitting to the in-

sulator member without relative rotation therebetween."

"23. In a pothead device comprising a hollow body portion adapted to contain a cable, closure fittings for the upper and lower ends of the said body portion, means readily attachable and detachable with said body portion for retaining said fittings in position; the upper fitting comprising a bolting flange, a central apertured hub portion offset from the plane of the said flange and a frusto-conoidal section connecting the said hub and the said flange, the said upper fitting arranged to receive and support the terminal of said cable."

The claims were rejected on reference to the following patents:

Roesch, 1,033,196, July 23, 1912.
Frank, 1,364,469, May 20, 1919.
Austin, 1,630,104, May 24, 1927.
Williams, 1,762,495, June 10, 1930.
British patent, 273,370, June 20, 1927.

The claims in the first class above mentioned were rejected on the patent to Frank, or on the British patent, considered together with the patent to Roesch. Claims 22 and 23 were rejected on the reference Austin or Williams in view of Frank.

Appellant's invention relates to electrical conductors, "and more particularly to Pothead Devices such as are used for connecting electrical cables and overhead conductors." The device consists of a tubular insulation member of porcelain, such as is usually termed a "pothead," so shaped as to receive a cable conducted into the pothead from below, which cable extends through the center of the pothead and by means of suitable connections is conducted through the top and thence to the distributing means above. The device is intended to be an insulating agent and in practice is filled with some insulating material, presumably liquid. It is desired that there be no leakage of air or fluid at either end of the device, and the particular matter involved here is the means of connection between the two ends of the pothead device and the tubular central portion.

The appellant has a similar joint at each end of his pothead. Description of one of these is sufficient: A circular ring is slipped over the end of the porcelain insulator member and a snap ring is then inserted in a groove which has been made in the porcelain member. The snap ring prevents the circular ring from being withdrawn from the porcelain member, because

of the abutting of the projecting ring against a shoulder formed upon the circular ring. A cover member inclosing connections for the end of the cable is then placed over the end of the porcelain member, from which it is separated by a gasket. By means of bolts extending through this cover member into the circular ring aforesaid, it is possible to draw the ring and the porcelain member surrounded by it into close contact with the cover member, so that a tight joint will be made by means of the gasket above mentioned.

By means of this connection, the appellant accomplishes several objects: First, he obviates the necessity of using cement in fastening the cover member to the porcelain insulator; second, he is able to attach the fitting to the insulator member, "without relative rotation therebetween"; third, he has constructed a device in which the cover member and the porcelain insulator are readily detachable from each other. These features appellant contends are inventive.

The patent to Frank deals with an improvement in oil-filled lead bushings. The principal point with which we are concerned is the connection shown by Frank between his insulating member and the cap at the end. This connection is made by means of a clamping ring to which the cap is attached by bolts. The ring, however, instead of being attached in the manner shown by the appellant, is cemented to the insulator, thus making it impossible to remove the same or to avoid rotation, as in the case of appellant's disclosure.

The British patent shows the same kind of a connection, namely, cement, and also lacks the nonrotatable feature shown by appellant.

The patent to Roesch is largely relied upon in this case by the tribunals of the Patent Office. On the other hand, it is contended by appellant that Roesch deals with a nonanalogous art, and that it was invention for the appellant to take Roesch's disclosure from such a nonanalogous art and utilize it in the way he has done here. Roesch shows a device, as he says, "for Attaching Metallic Fixtures to Cylindrical Elements of Glass or Like Material." The principal object of the inventor was to secure metallic parts to glass cylinders, such as are used in syringes, commonly used in medicine. His device consists of an annular ring interiorly threaded, and which has an internal shoulder bearing upon the

outer surface of the cylinder of the syringe. It is prevented from being withdrawn from the end of the cylinder by means of a snap ring which rests in a groove in the outer wall of the barrel of the syringe. A cap is provided which has exterior threads which are capable of being screwed into the annular ring above mentioned. There is a gasket between the barrel of the syringe and the cap. By turning this cap the barrel of the syringe is drawn upward, and a fluid and airtight joint is made by means of the pressure upon the above named gasket. It is not claimed that there is any other feature of Roesch which is applicable here.

It is contended by the Patent Office tribunals that we may take the connection of Frank or the British patent, remove the cement, substitute the snap ring and annular ring of Roesch, and will then have a complete anticipation of appellant's device.

As it seems to us, it is rather a far cry from a rotatable connection used to prevent leakage in a hypodermic syringe and an insulator or pothead used to convey powerful electrical currents, such as is involved in the art now being considered. Certainly they can hardly be said to be analogous arts. We have recently had under consideration the case of In re Luks, 69 F.(2d) 552, 21 C. C. P. A. (Patents) 1005, wherein we discussed the authorities on the subject of analogous arts. In that case, a milking installation for a dairy farm, consisting of a rotating annular platform, was held to be an art not analogous to a similar device for washing automobiles. A general discussion of the authorities on the subject was there entered into, and it is unnecessary here to repeat the same. It is sufficient to say that this court strongly relied upon the case of Potts & Co. v. Creager, 155 U. S. 597, 15 S. Ct. 194, 199, 39 L. Ed. 275, and applied the doctrine therein announced, and the same doctrine is applicable here: "As a result of the authorities upon this subject, it may be said that, if the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and especially if the use of the old device produce a new result, it may at least involve an exercise of the inventive faculty. Much, however, must still depend upon the nature of the changes required to adapt the device to its new use."

Testing the matter by the rule announced, it seems to us that it required invention in this case for the appellant to take the snap ring fastening from Roesch and apply it to his electrical insulators, especially in view of the changes which were necessary in order to fit it for its uses in such insulating device.

We are, therefore, of opinion that as to the group of claims typified by quoted claim 2, the Board of Appeals was in error, and that said claims 2, 5, 6, 10, 11, 12, 13, 15, 16, 17, and 25 should have been and are hereby allowed.

As to claims 22 and 23, a somewhat different question arises. As to these, the Board of Appeals makes the following statement:

"Claims 22 and 23 are rejected on Austin or Williams in view of Frank. These claims do not involve the snap ring connection except by broadly making the connection a detachable one and the hub portion of a frusto-conoidal connecting section between the flange and the hub. This type of hub structure is broadly old in the patents to Williams and Austin and it is believed that it would not amount to invention to provide the hub portion of the same design of structure on the Frank apparatus and make the cement connection of some well known detachable type."

In commenting upon this statement, appellant contends that there is no such thing known to the art as a "cement connection of some well known detachable type." The Solicitor for the Patent Office admits this to be true in his brief, but contends that this was an error of language only. We have no means of knowledge except the recital of the Board of Appeals, and obviously the board was in error in this respect. A cement connection is a fixed connection, and is not a detachable connection or, as these claims recite, "readily attachable and detachable." The other features of the claims also are contended by appellant to be not shown by the references Austin or Williams or Frank. In the main, we agree with this contention, and are of opinion here, also, that the claims should be allowed.

The decision of the Board of Appeals is reversed.

*Reversed.*