## AUTOMATIC DEVICES CORPORATION v. CUNO ENGINEERING CORPORATION.

### No. 154.

Circuit Court of Appeals, Second Circuit.

Feb. 3, 1941.

---

[8] No opinion for publication.

See, also, D.C., 34 F.Supp. 144.

Drury W. Cooper, of New York City, Henry M. Huxley, of Chicago, Ill., and Thomas J. Byrne, of New York City, for appellant.

Robert S. Allyn, Hyland R. Johns, and Edward S. Higgins, all of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment dismissing its complaint in an action to enjoin the infringement of two patents: i. e. claims two, three and eleven of Patent No. 1,736,-544, issued to Herbert E. Mead; and claims one, two, ten, sixteen and eighteen of No. 2,117,232, issued to Joseph H. Cohen. The district judge held that Mead's patent was not infringed, and that Cohen's patent was invalid. Both inventions are for improvements in cigar and cigarette lighters installed in motor-cars, containing a glow member heated by, or being itself, a resistance coil in an electric circuit from the igniter coil. When such lighters first appeared they were in form of plugs, carried in a socket on the dashboard and pulled out when used. Two wires from the igniter coil led to opposite ends of a resistance coil in the plug, and, when pulled taut, these closed an open contact in the circuit and heated the glow member. After the plug had been used the release of tension on the wires opened the contact, broke the circuit, and the wires were reeled back into the socket as the plug was returned. These were called "reel type" lighters; in them the plug was never out of the circuit. They were in use at least as early as 1917. In 1921 a patent was issued to one, Morris (No. 1,376,154), for another type, the "wireless" lighter, in which no wires were attached to the plug, which, when pulled out of the socket, kept hot only so long as it took the glow member to cool off. In this type, of which there were several forms, while the plug rested in the socket the contacts of the circuit were open, and when the user wished to use it he completed the circuit by pushing it home —preferably against the resistance of a spring—and he was obliged to hold it in place until the glow member was hot enough. After he concluded that it had become so (in some forms the glow member was visible) he took out the plug, used it like a match or torch, and returned it to the socket. These lighters required the continued attention of the user, because it was essential that the plug should not close the circuit while the glow member was not to be heated, and that the circuit should not be closed for too long while it was. The record does not show how extensive was the use of these lighters before 1927 or 1928, when the plaintiff began to make them, except that they were already in great demand and much competition had developed among their manufacturers. Another device of the same sort appeared only a little more than a year after Morris (Zecchini, No. 1,437,701, Dec. 5, 1922); a third some six years later (Metzger, No. 1,622,334, March 29, 1927); and still a fourth, less than a year before Mead's patent appeared (Langos, No. 1,697,686, January 1, 1929). None of these differed basically from Morris, and they show that during the seven intervening years the art had been making rather futile attempts at improving and refining upon his disclosure.

So far as appears, nobody in this country before Mead made "wireless" lighters automatic; that is to say, so that they should hold their position, after they had been manually made to close the circuit,

should automatically break the circuit when the glow member got hot enough, and should give notice that the plug was ready for use. Smith filed a British application for an automatic "cut-out" by means of a thermostat in December, 1926 (Brit.Pat. 285,200 (1928) ) but that we cannot consider (§ 72, Title 35, U.S.C.A.) because the patent did not issue until 1928. Rupp had a similar device (Brit. Pat. 298,073) but even his German filing date was after Mead's. The art had indeed for many years used thermostats to break a circuit when it got overcharged; such uses go back to 1893 (Hammarstrom, No. 493,380). Moreover thermostats had been installed as "cut-outs" in tools—e. g. in sadirons—fifteen years before Mead's application was filed (Andrews, No. 1,025,852). But these uses rather fortify than impair the invention; for, the more general and familiar was the use of a thermostat to cut out an over-heated member in an electric current, the more curious it is that no one should have thought of its use to remedy the known defects of "wireless" lighters.

The only doubt, as it seems to us, that the prior art throws upon the invention arises from Copeland (No. 1,844,206) whose application was filed on April 18, 1927, four months before Mead's, and who was therefore a prior inventor. (Mead tried to carry his date back of April 18, 1927, and if it were an ordinary issue, we might agree that he succeeded, although the judge made no finding about it. Nor need we do so either; the standard in such cases is very exacting; and here no documentary evidence really corroborated the testimony of Mead and those who saw his work.) Copeland disclosed two forms of lighter, in both of which the cigar was inserted in a tube at the end of which was the glow member. In one form (figure two) the cigar was used to press the glow member against a spring and overset it, and thus to make a contact that completed the circuit; in the other form (figure six) a push-button, operable by the user's thumb, directly overset the spring. In each form after the glow member had been properly heated a thermostat pushed back the spring to its first position and broke the circuit, at the same time giving notice to the user by putting out a light. (The thermostat was not actuated by the heat of the glow member as in Mead, but by a separate resistance coil so timed as to break the circuit at the proper moment. That was, however, a difference of detail in design on which Mead's invention cannot rest.) It must be owned that Copeland's figure six did disclose a lighter, manually operated, which, once put in operation, did not require continued pressure, which automatically cut out the current when the glow member was hot enough, and which advised the user of that fact. Moreover, very few structural changes were necessary to convert this into Mead's lighter. The "tubular extension 16" (page 1, line 71), which held the glow member, was already removable; it was only necessary to make it accessible to the user and to attach the wiring to the "tubular guide, 11" (page 1, line 62). When that was done, the holder would become a "wireless lighter" quite as much as Morris's or his successors'. This is the strength of the defendant's argument which prevailed in the Seventh Circuit (Automatic Devices Corp. v. Sinko Tool & Mfg. Co., 112 F.2d 335) and in the district court.

Nevertheless, it does not persuade us. Copeland's invention was still-born; it did not lead to the necessary modifications of Morris's lighter, nor did it suggest them; it was actually a step away from the "wireless" plug which is to be taken out, used like a match or a torch, and replaced, and which alone was capable of answering the needs of the art. Nor is it at all relevant that, after one had once thought of applying Copeland's arrangement to the plug type, the structural changes would have been simple. That is never the test; it is the conception that counts, the act of imagination which assembles the elements into the new and fruitful combination; not the working out of details. Potts v. Creager, 155 U.S. 597, 608, 15 S.Ct. 194, 39 L.Ed. 275; Regar & Sons v. Scott & Williams, 2 Cir., 63 F.2d 229, 231; Patent Royalties Corp. v. Land O'Lakes Creameries, 2 Cir., 89 F.2d 624, 627; Kelley v. Coe, 69 App.D.C. 202, 99 F.2d 435, 440. Complicated machines, which are in the day's work for skilled mechanics, will appear magic to a tyro who may find nothing but the obvious in a combination that has failed of discovery for a decade after the need arose. It would indeed be absurd to rate this as a major invention, yet it did bring to what appears to be its final form a contrivance which had become a standard fixture in motor cars; and upon every detail of these as much human ingenuity has been expended as perhaps on any machine. Just such trifles often help sales; in the severe competition of motor car industry the perfecting of even a trifling furnishing like this may be the object of study and experiment. The art itself shows that this has been true here, as we have already seen;

364

and the best test of what persons of routine ingenuity can do is what they have done. Perhaps, given the same technological stage of development, the same inventions are sure to appear and at about the same time, patents or no patents; but it is certainly unwarranted to assume that the small ones need less stimulus than the great ones; rather the contrary, for minds of the first order are more apt to express themselves without other inducement than the work itself. If patents are to go to those who contribute new appliances that are beyond the limited imagination of the ordinary skilled person, this invention seems to us to merit a patent.

■■ The claims being valid and there being nothing in the prior art which requires it, we see no reason to circumscribe them closely to the disclosure. Verbally there is no difficulty. Invention lay in the general conception reduced, of course, to practice as shown but the range of equivalents should be as broad as the actual invention, as we have often said. There is nothing which turns primarily upon the precise details of the structure; the claims are good as they read, if good at all. We hold that they are valid and infringed.

■■ As to the Cohen patent little need be said; here Mead is prior art and anticipates all that can be regarded as more than competent designing. We agree that the claims in suit are invalid.

As to Mead's patent, judgment reversed; as to claims 2, 3 and 11 (plaintiff withdrew claim 1); as to Cohen's patent, judgment affirmed.