**BREVETS AERO–MECANIQUES, S. A., et al. v. MARZALL, Commissioner of Patents.**

No. 1305–51.

United States District Court
District of Columbia.

May 13, 1952.

---

Roberts B. Larson, Washington, D. C., for plaintiffs.

E. L. Reynolds, Solicitor, Washington, D. C., for defendant.

TAMM, District Judge.

This is an action under Section 4915 of the Revised Statutes, Section 63, Title 35, U.S.C.A. The plaintiffs seek an adjudication that they are entitled to a patent on certain improvements in an Actuating Device for the Unlocking Control Used in Automatic Arms with Gas Tapping.

Plaintiff, Brevets Aero-Mecaniques, S. A., is a corporation organized and existing under the laws of Switzerland, and has an office and place of business in Geneva, Switzerland. It is the assignee by assignment of the plaintiff, Bernard Maillard, of the application for a patent involved herein. Plaintiff, Maillard, is a Swiss citizen and a resident of Geneva, Switzer-

land. The defendant is the Commissioner of Patents of the United States.

The plaintiffs have duly prosecuted their application for Letters Patent in the Patent Office. The serial number assigned to their application is 609,836. Upon final rejection of their claims by the Primary Examiner, the plaintiffs appealed to the Board of Appeals of the Patent Office. After a hearing on the appeal, the Board of Appeals, in a decision rendered on December 19, 1950, sustained the action of the Examiner in rejecting the claims of the application.

Although ten claims were presented to the Patent Office by the plaintiffs only two claims, numbers 8 and 9, are before this Court. A statement of these claims follows:

8. In an automatic firearm, a breech mechanism including a breech casing, a barrel, means for detachably securing said barrel to said breech casing, said means requiring rotation of said barrel with respect to said casing for fixation thereto and removal therefrom, means for transmitting energy from the inside of said barrel to said breech mechanism, said last-named means including at least two cooperating elongated parts disposed parallel to said barrel and carried one solely by said barrel and one solely by said breech casing, means for mounting said cooperating elongated parts each for sliding movement in the longitudinal direction and in such radial positions as to be located end to end when the barrel is on the breech casing in the assembled position, the contacting respective ends of said parts being at all times freely slidable in the transverse direction with respect to each other whereby instantaneous fixation and removal of the barrel with respect to the breech casing can be carried out without interference from said parts.

9. A combination according to claim 8 including a small cylinder carried by said barrel and communicating with the inside thereof, said cylinder being closed toward the front, the elongated part carried by the barrel consisting of a rod the front end of which is engaged in said cylinder to form a piston therein.

The plaintiffs contend that the rejection of these claims by the Patent Office was erroneous and ask this Court to issue a decree adjudging that they are entitled to a patent for the alleged invention defined in the claims.

In order that the precise nature of the claimed invention might be more readily understood, a brief description of the problem which the plaintiff, Maillard, sought to resolve is set forth.

When automatic weapons with a high rate of firing are shot for some time, the barrel becomes dangerously hot.[1] If the use of the gun is required after the barrel has become critically heated, the operator of the piece is faced with a choice of one of three courses of action: (1) continue to fire the gun with the practical certainty of either permanently incapacitating it or damaging it to such an extent that time-consuming repairs are required; (2) leave the gun inactive until the barrel has cooled off sufficiently for the gun to be safely put into use again, or (3) remove the hot barrel and mount a cold barrel. Obviously the first two choices are not desirable, particularly during combat. Where the gun bears a gas tapping device mounted on the barrel and the breech casing, and the barrel is joined to the breech casing by screw threading, the third choice is equally undesirable according to the plaintiffs. For the substitution of barrels requires the removal and subsequent remounting of a part of the gas tapping device. An expert witness for the plaintiff testified at the trial that the exchange of barrels for this type weapon requires the services of men skilled in this delicate work and takes from one to three hours to complete. The plaintiffs' alleged invention will facilitate the exchange of barrels for this type gun, for, according to their design, it will no longer be necessary to remove any part of the gas tapping device in substituting one barrel for another,

---

1. Expert testimony adduced at the trial was to the effect that the barrel of a gun firing at the rate of 1000 rounds per minute would become critically hot after twelve or fourteen seconds of firing.

and the time required to complete the substitution will be only about ten seconds.

The purpose of a gas tapping device is to utilize the gas pressure built up in the barrel when the projectile leaves the cartridge case to unlock the breechblock lock and retract the firing pin. This is accomplished by having the gas pressure referred to bled through a minute opening in the gun barrel into a cylinder mounted on the top of the barrel. Upon entering the cylinder this pressure forces back a piston contained therein in such a manner as to activate a push rod (or push rods) that passes through the front end of the receiver and initiates the unlocking of the breechblock lock. Since the gas required for the unlocking is taken from the barrel and the unlocking of the breechblock necessarily takes place in the breech casing, it follows that a mechanical means of transmission of the motion between the barrel and the breech casing cannot be avoided.

The Court does not think it necessary to present a detailed delineation of the construction and mounting of the conventional gas tapping device. It is sufficient to state that heretofore automatic weapons with gas tapping having a barrel attached by screw threading to the breech casing were so constructed that the gas cylinder bridged the barrel and breech casing in such a way that it was impossible to remove the barrel without first removing the gas cylinder. In other words, it was impossible, under conventional design, to rotate the barrel of the gun about its axis while the gas cylinder was mounted on the gun because of the mechanical fixation of the barrel and the breech casing caused by the cylinder. The design set out in the claims of the plaintiff permits such rotation of the barrel in the transverse direction without removing the gas cylinder. Therein lies the improvement which the plaintiffs contend defines such invention as entitles them to a patent.

Plaintiff, Maillard, has accomplished his improvement in the following manner. He has employed an elongated rod which is mounted on the gun barrel and acts as a piston upon being actuated by the propellant gases. Another elongated rod is mounted on the breech casing. This rod is aligned with that on the barrel and is actuated by it for the purpose of transmitting force to the unlocking mechanism. To prevent interference with the required relative rotation of the gun barrel with respect to the breech casing for disassembly and assembly purposes the adjacent ends of the elongated rods are positioned in an only abutting relationship which readily permits a relative lateral motion therebetween. Maillard attaches his gun barrel to the breech casing by means of screw threading. Thus the inventive concept here resides in the mounting of the elements of the unlocking motion transmitting mechanism used in conjunction with a readily removable gun barrel, one part of the transmitting mechanism mounted on the barrel and the other on the breech casing, in such a manner as to permit a ready and quick removal of the gun barrel from and replacement on the breech casing with no interference thereto being imparted by the motion transmitting mechanism. The plaintiffs argue that the prior art does not disclose the arrangement described above, and, consequently, the Patent Office was in error in rejecting their claims.

It is the position of the Patent Office that all of the essential elements of the plaintiffs' claims are disclosed by prior patents of record. In support of its position the defendant has referred the Court to the five patents on which it relied in rejecting the claims of the plaintiffs. These are Marga, No. 908,294, December 29, 1908; North, No. 1,363,262, December 28, 1920; Swebilius, No. 1,550,759, August 25, 1925; Horan, No. 2,341,780, February 15, 1944, and a German Patent No. 611,433, March 27, 1935.

Horan in his patent disclosed an automatic firearm with a breech mechanism operated by the propellant gases. In Figure 15 of this patent, there are shown a pair of members carried respectively by the breech and barrel for transmitting motion imparted by the gas for actuating the breech mechanism. The Examiner, in rejecting the plaintiffs' claims, stated that not only are these elements longitudinally slidable but that they are also mounted so as to be relatively transversely slidable. The plain-

tiffs challenged this reading of the Horan patent before the Board of Appeals. They argued there, as they did here, that it is not clear in Horan that the elements referred to are transversely slidable with respect to each other, but that as far as is disclosed in this reference, these elements might just as well be regarded as nested or meshed in their normal inoperative positions as only abutting and, consequently, the Examiner was unwarranted in assuming that they are abutting.

The Board of Appeals rejected this argument of the plaintiffs. They relied on the fact that in the Horan patent it is stated that the driver member of the two elements is "to be in the form of that shown in Figures 9 and 10 of that patent." There, the pin which is the part of the driver member which contacts the actuating member, in the words of the Board of Appeals, "is clearly illustrated as devoid of any cup or recess and to have an abutting relation with its proximate actuating member, * * *." The Board concluded: "* * * W(e) are consequently in agreement with the Examiner's view that Horan discloses an abutting disposition of his elements * * *". Independent examination of the Horan patent has convinced the Court that the view of the Patent Office on this question is correct. It may be noted that at the trial of this case an expert witness for the plaintiff testified that the elements of the Horan patent were in an abutting relation and consequently freely slidable in the transverse direction.

The plaintiffs argue further that the inventive concept of their application is not taught by Horan since the latter did not mount his barrel by a turning connection. Horan utilized a locking pin to hold his barrel in place. Thus it is clear that he was not faced with the problem which Maillard sought to resolve since no rotation of the barrel was required for its removal. However, a screw thread mounting of the barrel (i. e., a mounting which requires a rotative operation) was well-known to the art. This is clear from the Swebilius reference. (Swebilius, No. 1,550,759, August 25, 1925). Thus, it appears that what the plaintiffs have done is take the abutting elements of Horan's motion transmitting mechanism, drop the pin fixation of Horan's barrel, and substitute the screw thread mounting of the Swebilius patent.

The question before the Court is: Does this constitute invention? The Patent Office was, and is, of the opinion that it does not. The Court agrees. Since the motion transmitting mechanism of Horan is obviously adaptable to attaching and detaching expedients utilizing screw threads and a rotative operation, the Court thinks it would not amount to invention to attach Horan's gun barrel by screw threads as taught by Swebilius. This would involve only the provision of an old and well-known attaching expedient such as would be readily apparent to one skilled in the art. Such a modification of the Horan device does not involve such a "flash of genius" as would entitle the plaintiffs to a patent. See: Vanadium Corporation of America v. Marzall, D.C.Cir., 197 F.2d 187. The plaintiffs have simply, but intelligently, utilized principles known to the art to solve the problem they set out to resolve. The plaintiffs have not created; they have applied. They have not unveiled that which was heretofore unknown; they have adapted that which was already known. That being the case, a review of the various Court decisions in which invention is defined[2] leads the Court to the conclusion that

2. See: Webster Loom Co. v. Higgins, 1881, 105 U.S. 580, 26 L.Ed. 1177; Hollister v. Benedict & Burnham Mfg. Co., 1885, 113 U.S. 59, 5 S.Ct. 717, 28 L.Ed. 901; Potts v. Creager, 1895, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Miehle Printing Press & Mfg. Co. v. Whitlock Printing Press & Mfg. Co., 2d Cir., 1915, 223 F. 647; Kirsh Mfg. Co. v. Gould Mersereau Co., Inc., 2d Cir., 1925, 6 F.2d 793; Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2d Cir., 1927, 18 F.2d 66; Davies v. Coe, 1936, 65 App.D.C. 345, 83 F.2d 602; Standard Oil Development Co. v. Coe, 1936, 66 App.D.C. 295, 86 F.2d 851; Poulsen v. Coe, 1941, 73 App. D.C. 324, 119 F.2d 188; Besser v. Ooms, 1946, 81 U.S.App.D.C. 7, 154 F.2d 17.

the plaintiffs are not entitled to a patent and that the decision of the Patent Office rejecting the claims here involved be affirmed.

Findings of fact and conclusions of law being embodied in the text of this opinion, they are not formally set forth. Judgment for the defendant will be entered.