**SUN OIL CO.**

v.

**TUBULAR SERVICE & ENGINEER-
ING CO. et al.**

Civ. No. 5795.

United States District Court,
S. D. Texas, Houston Division.

April 15, 1954.

Busser & Harding, Frank S. Busser,
Philadelphia, Pa., Theodore E. Simonton,
Cazenovia, N. Y., Browning & Simms,
Ralph R. Browning, Houston, Tex., for
plaintiff.

Earl Babcock, Duncan, Okl., and
Hutcheson, Taliaferro & Hutcheson, Tom
O. Arnold, Houston, Tex., for defendants.

HANNAY, District Judge.

### Findings of Fact

1. Plaintiff Sun Oil Company is the owner of United States Letters Patent No. 2,518,663 issued to it on August 15, 1950, as the assignee of the inventors Preston E. Chaney and William E. Barnes, and has been the owner of said patent since that date. (Pltfs. Exs. 1, 2.)

### Notice of Infringement

2. Plaintiff before filing the original Complaint herein gave actual notice to Defendant Tubular Service & Engineering Company of its infringement of the patent in suit. (See Paragraph X of the Second Supplemental Complaint and Paragraph X of Defendant's Answer to Second Supplemental Complaint.)

3. Defendant Tuboscope Company operates what is substantially the former tubing calipering business of Defendant Tubular Service & Engineering Company and is in substance the creature and instrument of the latter corporation, and hence had notice of its infringement at its inception. (See last sentence of Paragraph VIII of the Second Supplemental Complaint, which was not denied by Defendants in their answer thereto and hence must be taken as admitted.)

4. Defendants John Cary Kinley and Myron M. Kinley were notified of their infringement by the filing of the Second Supplemental Complaint, and had actual notice of this suit and assumed the defense thereof from the beginning. (See Paragraphs VIII and IX of the Second Supplemental Complaint, the latter being admitted by the Answer thereto; see also Pltfs. Ex. 10, Article 15.)

### The Invention

#### The Problem

5. Preston E. Chaney and William E. Barnes in April and May, 1944, were giv-

en by their employer, Plaintiff, Sun Oil Company, the problem of providing a tubing caliper suitable for use in high pressure oil and gas wells for determining and recording variations of internal surface configurations of conduits such as oil well tubing, for the purpose of determining the extent of reduction in wall thickness thereof due to corrosion or other factors. (Chaney, Tr. p. 56–58.)

6. The requirements for a caliper such as Chaney and Barnes were called upon to provide included:

(a) It should be mechanical rather than electrical to operate under pressure because of the practical difficulties of running an electrical cable through a stuffing box or seal into the well against such pressures. (Chaney & Barnes in Oxford Report, Pltfs.Ex. 23, p. 18); J. C. Kinley, Tr. p. 610–12; patent in suit, Pltfs.Ex. 1, col. 1, ll. 38–54.)

(b) Stuffing boxes and packing glands should be avoided in the caliper proper as they would not be practical under the conditions of temperature and pressure in deep, high pressure wells, so that all parts of the caliper had to be of a nature that could be open to the well fluids. (Chaney in Oxford Report, Pltfs.Ex. 23, p. 33; J. C. Kinley, Tr. p. 612–14; patent in suit, col. 3, ll. 5–15.)

(c) It had to be both sensitive and rapid in its operation so that a long string of tubing could be calipered in a reasonable time. (J. C. Kinley, Tr. p. 616–7.)

(d) A considerable number of feelers were required so as to scan as large a portion of the inner circumference of the tubing as possible. (Adamson deposition, Tr. p. 378; J. C. Kinley, Tr. p. 617–8; Kelly, Tr. p. 297.)

(e) All the feelers should act upon a single stylus to produce a single simple record. (Patent in suit, col. 2, ll. 28–44 and col. 3, ll. 27–34; J. C. Kinley, Tr. p. 620–1.)

(f) The single record should indicate clearly and accurately the depth of the deepest pit encountered at any level along the length of the tubing. (Patent in suit, col. 2, ll. 17–28, and col. 2, l. 53 to col. 3, l. 4; Oxford Report, Pltfs.Ex. 23, p. 32; Chaney, Tr. p. 60; Price, Tr. p. 917.)

7. The problem of dealing with tubing corrosion in wells has existed ever since iron and steel pipe has been used in wells, and this problem has been intensified by the experiences of well operators with corrosion in high pressure gas condensate wells, as a result of which one of the most aggressive research programs ever designed for developing protection against corrosion was put into effect. (Short article in Oil and Gas Journal of January 6, 1945, Pltfs.Ex. 16, also contained in Defs.Ex. 29, p. 1, col. 1 of the publication).

8. Prior to the invention of the patent in suit it was necessary, in order to determine the extent of corrosion in well tubing in a high pressure well, to kill the well by pumping heavy mud into it, with the possibility of damaging its production, to remove the tubing and examine it on the surface visually, and then either run it back in or replace it as indicated by the inspection. In addition to the danger of damaging the well, this procedure involved great expense in pulling and re-running the tubing. (Short article in Oil and Gas Journal, Pltfs.Ex. 16, p. 1, col. 3; Chaney, Tr. p. 56.)

*The Chaney-Barnes Tubing Caliper of the Patent in Suit Solved the Problem and Achieved Commercial Success.*

9. The Chaney-Barnes tubing caliper described and claimed in the patent in suit satisfies fully all of the requirements of the problem as set forth in findings 5 and 6 above. (See patent in suit, Pltfs. Ex. 1.)

10. Plaintiff, Sun Oil Company, has constructed and used successfully in its own wells from March, 1945 until the latter part of 1948, calipers as exemplified in Plaintiff's Exhibit 19 which were substantially identical with the caliper shown and described in the Chaney-Barnes patent. (Chaney, Tr. p. 66–71.)

11. Plaintiff, Sun Oil Company, entered into an agreement with Otis Pressure Control, Inc. and Otis Engineering Corporation, of Dallas, Texas, effective February 1, 1946, under which the said Otis Companies became licensees under the application for the patent in suit. (Spurdle, Tr. p. 173-4; Pltfs.Ex. 32.)

12. Under that license agreement Otis Pressure Control, Inc. borrowed from plaintiff, Sun Oil Company, two or three Chaney-Barnes calipers each having six wheeled feelers and otherwise substantially identical with Plaintiff's Exhibit 19, and with the instrument shown and described in the patent in suit, and subsequently, Otis Engineering Corporation built for Otis Pressure Control, Inc. a number of additional calipers known as Type A substantially identical in construction and operation to those borrowed from Plaintiff, Sun Oil Company, and to the caliper shown and described in the patent in suit. (Chaney, Tr. p. 67; Kelly, Tr. p. 123-7.)

13. When the Chaney-Barnes and Otis six-wheel Type A calipers became available to the public in 1946 they were immediately successful and in less than three years were used to caliper 6,556,-784 feet of well tubing. (Kelly, Tr. p. 120-2-; Pltfs.Ex. 26.)

14. An Otis-built caliper with certain design changes such as the use of "sled" type feelers instead of wheeled feelers but in which the principle of operation was essentially the same as the wheeled feeler calipers theretofore offered by Otis (Kelly, Tr. p. 296-7), was made available to the public in 1948 and has since been used to caliper over 21,000,000 feet of well tubing (Kelly, Tr. p. 275-6; Pltfs.Ex. 26).

15. Among the Otis customers for whom the wheel type caliper was run are Humble Oil & Refining Co., The Texas Co., Gulf Oil Co. of Texas, Gulf Refining Co., Gulf Production Division in Louisiana, Phillips Petroleum Company, Barnsdall Oil Co., and the Cotton Valley Operators' Committee. (Kelly, Tr. p. 281.)

*The Solution was Achieved by the Combination of Elements Recited in the Claims*

16. Each of the claims of the Chaney-Barnes patent, 2,518,663 expresses the novel concept of the Chaney-Barnes tubing caliper in terms of the combination of elements recited in the claim, including the structure of the elements and their physical relationship essential to the functions recited therein; and said novel concept resides in the automatic selection, measurement and recording of the single, largest radius corresponding to the deepest pit encountered at each level of a well tubing being calipered, customarily under pressure in a live oil and gas well.

17. The only element asserted by Defendants to be essential to the Chaney-Barnes invention which is not positively recited in the claims is the centering device comprising the spring 36 and plug 37 shown in Fig. 7 of the patent in suit. (J. C. Kinley, Tr. p. 662; Kenway, Tr. p. 1184-5.)

18. The claims of the patent in suit do not include this centering device either expressly or impliedly. (Spurdle, Tr. 269-70; J. C. Kinley, Tr. p. 674; Simonton statement, Tr. p. 1259; Kenway, Tr. p. 1259-61.)

19. The specification of the patent in suit does not recite this centering device as an essential element of the invention but only that it is important that the caliper be centered, which centering is performed by the feelers themselves. (Patent in suit, col. 2, *ll.* 28-44; Spurdle, Tr. p. 269-71.)

20. The caliper of the patent in suit will operate without the spring 36 and plug 37 to record the depths of the deepest pits encountered at successive levels calipered (Kelly, Tr. p. 302-3, 327-8), the feelers serving in such case to maintain the caliper centered. (Kelly, Tr. p. 311; Spurdle, Tr. p. 215, 270-1).

21. The centering spring and plug serve to improve the accuracy of the Chaney-Barnes caliper and are therefore

desirable, though not essential. (Chaney, Tr. p. 85–6; Kelly, Tr. p. 133, 302–3, 326–8; Spurdle, Tr. p. 215, 219–20.)

22. In the absence of the centering spring and plug, the centering function is performed by the feelers and their individual springs, and it is more perfectly performed by the feelers and their individual springs the more nearly vertical the position of the caliper in operation and the larger the number of feelers employed. (Chaney, Tr. p. 85–6; Spurdle, Tr. p. 268–71.)

23. The omission of the centering spring and plunger in defendant's calipers complained of is immaterial to the issue of infringement. (Kenway, Tr. p. 1262.)

*The Prior Art Produced No Satisfactory Solution and Fails to Invalidate the Chaney-Barnes Patent*

24. In the prior art patents only two relate to tubing calipers for use in an oil well, Brandon 2,322,343 and McMahan 2,544,609. (J. C. Kinley, Tr. p. 779.) The caliper shown in the McMahan patent is the same as that disclosed in the Short article in the Oil and Gas Journal of January 6, 1945 (both in Defs. Ex. 29; Kenway, Tr. p. 1180.) Both the Brandon patent and the Short article were considered by the Patent Office and the claims in suit were allowed over them. (Pltfs. Ex. 1, col. 10.) Neither the Brandon nor the McMahan caliper solved the problem solved by Chaney and Barnes. Brandon's caliper was electrical, and intended for use in pumping wells not under pressure (J. C. Kinley, Tr. p. 780–3; Brandon patent, p. 1, col. 1, *ll.* 1–11), and would not measure depth of pits but only indicated wear of more than a predetermined depth (Brandon patent, p. 4, col. 1, *ll.* 5–13). McMahan's caliper was capable only of indicating average diameter and not pit depth. (Chaney, Tr. p. 97; J. C. Kinley, Tr. p. 598–9; Kenway, Tr. p. 1199–1201; McGuire, Tr. p. 50–52; Spurdle, Tr. p. 245.)

25. In addition to the Brandon and McMahan patents, the only prior art patents relating to the calipering of tubing are De Leeuw 1,416,694 and Stark 2,121,614. The calipers of both patents are intended for use above ground for gauging short lengths of tubing, and both are entirely remote, structurally and functionally, from the Chaney-Barnes caliper. De Leeuw merely measures the average diameter sensed by his two feelers. Stark gauges and records the maximum and minimum internal diameters of tubes used in pipe stills and the like.

26. The prior art patents include four relating to calipers for measuring and recording the width of a well bore hole at successive levels, for the purpose of estimating the successive cross-sectional areas and determining the approximate cubic footage of cement or the like required to line the bore hole. These four are the patents to Hardel 1,337,955, Kinley 2,102,080, Kinley & Gupton 2,267,110 and Robidoux 2,340,987 (J. C. Kinley, Tr. p. 779.) The first three of these patents were considered by the Patent Office during the prosecution of the Chaney-Barnes patent (Pltfs.Ex. 1, col. 10), and the Robidoux patent adds nothing of consequence to them, being merely the final commercial form of the Kinley and Kinley-Gupton patents (M. M. Kinley, Tr. p. 1114–5, 1130; Kenway, Tr. p. 1176–7). The devises of all four of these patents are incapable of measuring a single radius corresponding to the deepest pit in a tubing.

27. The remainder of the prior art patents consists of ten patents relating to remote arts, as follows: (a) hand gauges for measuring sheet thickness, Dennison 165,158. Vassar 212,288; (b) textile machinery, Whitehead 284,585, Schaer 287,585, Falls 436,577, Falls 500,120; (c) shoe machinery, Nichols 841,809, Nichols 1,113,472, Stiggins 1,163,115, Denne 1,651,588. The two hand gauges are wholly lacking in pertinence to the patent in suit, and the textile and shoe machinery patents belong to non-analogous arts and are not proper references under the doctrine of Potts v. Creager, 155 U.S. 597, 606–608, 15 S.Ct. 194, 39 L.Ed. 275.

28. No device of the prior art patents or publication shows the combination of elements claimed in any of the four claims of the patent in suit. (J. C. Kinley, Tr. p. 798–9, admits this as to all prior art except the Hardel patent and admits, Tr. p. 808, that Hardel provides only for rough measurement of the width of a rough bore hole.)

29. The models, Defendants' Exhibits 32 and 33, and the corresponding drawings (Defs.Exs. 38, 39), are not part of the prior art but were made in the course of preparation for the trial of this case for purposes of illustration, and have never actually been used (J. C. Kinley, Tr. p. 588–592, 855–6). Defendants' Exhibits 32 and 38 show a purported combination of the patents to Kinley 2,102,080 and Nichols 1,113,472, and Defendants' Exhibits 33 and 39 show a purported combination of the patents to Kinley 2,102,080 and Stiggins 1,163,115. The hypothetical combinations illustrated thereby depart in major particulars from the disclosures of the prior art patents on which they are purportedly based (Kenway, Tr. p. 1234–8), and, even with such departures, the combinations are incapable of serving the purpose of the Chaney-Barnes caliper (Kenway, Tr. p. 1217). Furthermore, the combinations are improper because the patents to Nichols 1,113,472 and Stiggins 1,163,115, both relate to the non-analogous art of shoe machinery.

30. The shoe machinery and textile machinery patents contain no teaching as to how the structures disclosed therein could be altered for use in calipering tubing, nor do they even contain any suggestion that they might be altered for this purpose. (Kenway, Tr. p. 1238.)

31. The shoe machinery and textile machinery patents are from foreign arts and not from arts to which one skilled in making measurements in wells or in the calipering of tubular members would turn for solution to a problem in his own art; and neither party did so.

32. It should not have been and was not obvious to a person or persons skilled in the art of calipering tubing at the time of the making of the invention described and claimed in the patent in suit, that the open hole diameter or width measuring caliper of the Kinley patent, or of the other patents for this same purpose, could be combined with the feeler recording mechanisms of the Stiggins or Nichols patents, or of the other patents in the shoe machinery and textile machinery fields, for the purpose of producing a caliper that would give a single record of the greatest outward feeler movement at every instant during the calipering operation. These combinations were only conceived of by the defendants' experts J. C. Kinley and Kenway with the disclosure of the Chaney-Barnes patent before them in the course of attempting to build an anticipation where none existed.

### Infringement

33. Defendant, Tubular Service & Engineering Company, since the issuance of the patent in suit and prior to the filing of the original Complaint, has used tubing calipers as illustrated in the photographs, Plaintiff's Exhibits 3 and 5, and in the figure entitled "Defendant's Original Structure" in the drawing, Plaintiff's Exhibit 7.

34. The defendants, Tubular Service & Engineering Company and Tuboscope Company, since the filing of the original Complaint and prior to the filing of the Second Supplemental Complaint, have made and used calipers as illustrated in the photographs, Plaintiff's Exhibits 4 and 5, in the drawing constituting the last sheet of Plaintiff's Exhibit 6, and in the figure entitled "Defendant's Modified Structure" in Plaintiff's Exhibit 7.

35. The individual defendants, J. C. Kinley and M. M. Kinley, since the issuance of the patent in suit and prior to filing of the original Complaint, have used calipers as illustrated in the circular, Plaintiff's Exhibit 51, which have the feeler head illustrated in the figure entitled "Defendant's Modified Structure" in Plaintiff's Exhibit 7 and the tape recording mechanism of the McMahan pat-

ent 2,544,609. (Stipulation, Tr. p. 999; J. C. Kinley, Tr. p. 614-5; Pltfs.Ex. 51.)

36. All of the calipers referred to in the preceding paragraphs 33, 34 and 35 have a cluster of leaf spring feelers acting upon a common stylus actuating rod in such manner that the extent of movement of said stylus rod is dependent upon the position of that particular feeler that is furthest outward from the housing of the caliper, and any of said feelers are free to move outward into a pit or pits independently of any other feelers that may be retained by the smooth tubing wall; in all of said calipers, the spring feelers, during the entire range of outward movement within which they are capable of calipering, of necessity exert a force against said stylus rod greater than the opposing force exerted on said rod by the stylus return spring; all of said calipers have only a single stylus connected to said stylus rod for producing a record corresponding to the movements thereof; and in all of said calipers the plurality of spring feelers serve to center the caliper within the tubing being calipered sufficiently for all practical purposes.

37. All of the calipers referred to in paragraphs 33, 34 and 35 embody every element set forth in claims 1, 2, 3 and 4 of the Chaney-Barnes patent in suit.

38. The point in the outward movement of a single feeler at which the force exerted by the spring of that feeler becomes balanced by the force exerted by the stylus return spring is a matter of design depending upon the desire of the designer as to the outward limit of effectiveness of single feeler sensitivity of the caliper, and may be made to fall at any point depending on the desires of the designer. (Price, Tr. p. 1084-5.)

39. The defendants from the date of beginning of their offering of calipering service to the public have not had in their calipers elements corresponding to the centering spring 36 and plug 37 of the patent in suit, but have from such beginning up to the time of trial continuously represented to the public that their calipers measure the depth of the deepest pit in tubing being calipered (Defs.Ex. 13; Pltfs.Exs. 6, 45, 46, 51), which representations are inconsistent with their contention at the trial that an off-center shift due to lack of a centering spring and plug prevents defendants' calipers from measuring pit depth.

40. In practice, defendants' calipers produce caliper charts entirely comparable to those produced by Otis calipers built in accordance with the principles and claims of the patent in suit (Tuboscope records, Pltfs.Exs. 27-31 and Otis records, Pltfs.Exs. 33-37, consisting of records made by the respective calipers in the same wells at approximately the same dates), and these records were sufficient to satisfy customers as to the comparable nature of results from defendants' and Otis calipers. (Kelly, Tr. p. 289-297, 1408-20.)

*Willful Character of Infringement*

41. Defendants' first tubing caliper design was commenced by defendants, J. C. Kinley and M. M. Kinley in November or December, 1946, and after the Otis caliper, substantially identical with the patent in suit, was on the market and had been publicized. (Pltfs.Ex. 20; Defs.Ex. 8 with subnumbers; J. C. Kinley, Tr. p. 395-6, 401-2.)

42. Defendant, M. M. Kinley, saw details of the Otis caliper on February 10, 1947, and had same explained to him during the period when he and J. C. Kinley were making an effort to reduce their first caliper design to practice. (See Babcock's admission, Tr. p. 43; Kelly, Tr. p. 128-9; M. M. Kinley, Tr. p. 1122; J. C. Kinley, Tr. p. 396.)

43. Defendant, Tubular Service & Engineering Company, in taking a license on October 15, 1948, from J. C. Kinley and M. M. Kinley, under which license it and Tuboscope Company have conducted their infringing activities, secured an agreement from M. M. Kinley and J. C. Kinley to indemnify it and save it harmless against suits for patent infringement. (Pltfs.Ex. 10, Article 15.)

44. After the issuance of the patent in suit and the filing of the original Complaint, defendant, Tubular Service & Engineering Company, added a second stylus to its calipers (Stipulation, Tr. p. 999), without modifying the action of the previously employed caliper combination (Kenway, Tr. p. 1263-4), and defendants now contend that the addition of such stylus avoids infringements. (Babcock statement, Tr. p. 933; Kenway, Tr. p. 1223-4).

45. Defendant, Tubular Service & Engineering Company, caused defendant, Tuboscope Company, to be formed and transferred to it, and through it has continued to operate, what is substantially the former tubing calipering business of Tubular Service & Engineering Company. (Last sentence of Paragraph VIII of Second Supplemental Complaint—not denied in answer thereto.)

46. The defendants have all gone forward with their infringing activities since the issuance of the patent in suit with full knowledge of said patent and of their infringement thereof.

### Public Use or Intervening Rights

47. The Kinley caliper uses in the spring and summer of 1948 were not public uses but uses in public for experimental purposes (see Pltfs.Exs. 47, 48, 50; Defs.Ex. 12; J. C. Kinley, Tr. p. 712-53.)

48. The Chaney-Barnes application for the patent in suit at all times during its pendency claimed the combination of the Kinley-Tuboscope calipers and contained claims covering same directly or under the doctrine of mechanical equivalents. (Pltfs.Ex. 2, the Chaney-Barnes file wrapper; Spurdle, Tr. p. 247-258.)

49. Plaintiff acted promptly upon obtaining knowledge of defendants' caliper structure in asserting claims covering same without reference to the doctrine of equivalents, and diligently prosecuted such claims to issuance of the patent. (Spurdle, Tr. p. 257-258; Chaney-Barnes file wrapper, Pltfs.Ex. 2.)

### The Effect of the Dallas Suit.

50. Plaintiff, Sun Oil Company, was not a party to nor in control of the defense of the litigation entitled "M. M. Kinley and J. C. Kinley v. Otis Pressure Control, Inc." Civil Action No. 4510, tried in the United States District Court for the Northern District of Texas, on June 11, 1952, and contrary to Sun Oil Company's wishes no appeal was taken in that case. (Babcock statements, Tr. p. 32, 1121.)

51. In the litigation referred to in paragraph 50, the McMahan patent was not held to be infringed by the Chaney-Barnes caliper of the patent in suit, which has no latch and release for the feelers, but by an Otis-built caliper having a latch and release added to the Chaney-Barnes caliper. (J. C. Kinley, Tr. p. 857-862.)

### Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter in this suit.

2. Plaintiff is the owner of the Chaney-Barnes Patent 2,518,663 and of all claims for damages for infringement thereof.

3. The prior art offered in evidence by the defendants does not anticipate any of the four claims of the Chaney-Barnes Patent 2,518,663.

4. Each of the four claims of the Chaney-Barnes Patent 2,518,663 sets forth a structure which involves invention over the prior art.

5. Each of the four claims of the Chaney-Barnes Patent 2,518,663 is valid.

6. Defendants, Tubular Service & Engineering Company, J. C. Kinley and M. M. Kinley, and each of them, have since the issuance of the patent in suit and prior to and since the filing of the original Complaint and prior to the filing of the Second Supplemental Complaint made and used calipers, which infringe each of the four claims of the Chaney-Barnes Patent 2,518,663.

7. Defendant Tuboscope Company, has since the filing of the original Com-

plaint and prior to the filing of the Second Supplemental Complaint made and used calipers which infringe each of the four claims of the Chaney-Barnes Patent 2,518,663.

8. Defendant, Tubular Service & Engineering Company, was notified of its infringement of the Chaney-Barnes Patent 2,518,663 before the filing of the original Complaint herein.

9. Defendant, Tuboscope Company, had notice of its infringement of the Chaney-Barnes Patent 2,518,663 at the time of the organization of Tuboscope Company.

10. Defendants, J. C. Kinley and M. M. Kinley, were notified of their infringement of the Chaney-Barnes Patent 2,518,663 by the filing of the Second Supplemental Complaint, and had actual notice of the patent and of the claimed infringement at the commencement of this suit.

11. The defendants, and each of them, have willfully and deliberately infringed and continued to infringe upon each of the claims of the Chaney-Barnes Patent 2,518,663.

12. There has been no public use of the invention set forth in the claims of the Chaney-Barnes Patent 2,-518,663 such as to create intervening rights that would bar or limit the scope of such claims or their application to the defendants' calipers.

13. The decision of the United States District Court for the Northern District of Texas in the case of Kinley v. Otis Pressure Control, Inc., Civil Action 4510, is not binding upon the plaintiff in this case and is without effect upon the issues herein involved.

14. The counterclaim filed herein by defendant, Tubular Service & Engineering Company, should be dismissed.

15. The plaintiff is entitled to an injunction against further infringement of the Chaney-Barnes Patent 2,518,663, to an accounting, and upon final judgment for proper damages, and to an award of costs.

Clerk will notify counsel.