**TUBULAR SERVICE & ENGINEERING COMPANY, Tuboscope Company, Myron N. Kinley and John Cary Kinley, Appellants,**

v.

**SUN OIL COMPANY, Appellee.**

**No. 15177.**

United States Court of Appeals, Fifth Circuit.

March 11, 1955.

Rehearing Denied April 5, 1955.

Writ of Certiorari Denied May 31, 1955.

See 75 S.Ct. 876.

Earl Babcock, Duncan, Okl., Thomas O. Arnold, Houston, Tex., for appellants.

Theodore E. Simonton, Cazenovia, N. Y., Ralph R. Browning, Houston, Tex., Frank S. Busser, Philadelphia, Pa., Browning, Simms & Hyer, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and DAWKINS, District Judge.

RIVES, Circuit Judge.

This appeal is from the district court's holding that appellee's patent No. 2,-518,663, described as a "Tube Calipering and Recording Mechanism", is valid and infringed by certain devices manufactured and used by appellants.

The patent in suit was granted August 15, 1950 to Preston E. Chaney and William E. Barnes, employees of appellee, on their application filed October 26, 1945. Specifically, the claimed invention therein relates to an improved type of mechanical measuring and recording instrument known as a tubing caliper. Such instrument is used in high pressure oil or gas wells to determine the extent of corrosion existent in the well tube, without the necessity and expense of removing the tube from the ground, and has considerable utility in revealing when a tube or section thereof should be removed and replaced in order to prevent extensive damage resulting from its fracture or breakage.

As the patent and physical exhibits show, the Chaney-Barnes patented structure reveals six small wheels or discs, called "feelers", which protrude under spring pressure from a housing so as to engage the inner surface of tubing into which the device is lowered. Deviations in the normally smooth inner surface of the tube caused by corrosion pits are translated through the "feelers" by means of a recording mechanism

within the housing and reflected on a graph or chart which is removed and studied to evaluate the tube's condition.

The validity and infringement of Claims 1 through 4 of the Chaney-Barnes patent in suit are here in issue, Claim 1 being a typical embodiment of the inventive concept involved and reading as follows:

"1. In an internal tube wall calipering and recording device adapted to be passaged through an extended length of tubing the combination comprising an elongated housing, recording means including a recorder member and a single stylus member mounted in said housing, a plurality of independently movable feelers spaced circumferentially of said housing and *adapted for independent lateral movement between said housing and the tube wall being calipered,* mechanical actuating means for said recording means common to all of said feelers and mounted in said housing for reciprocal movement therein, means for resiliently urging said common actuating means in one direction, and a plurality of movement transmitting means, one for each of said feelers, operable independently of each other to transmit outward movement of said feelers to said common actuating means, each movement transmitting means including *means for constantly and independently urging the corresponding feeler outwardly of said housing and for simultaneously urging its movement transmitting means in opposition to, and with a force greater than, said first-mentioned urging means,* whereby said common actuating means is movable in response to any of said feelers but is moved to an extent corresponding to and controlled by only the greatest outward feeler movement at any instance during a calipering passage." (Emphasis ours.)[1]

The district court, 120 F.Supp. 428, adopted findings of fact and conclusions of law proposed by appellee, in effect holding that the essentially novel inventive concept of the Chaney-Barnes patent, which established its validity and distinguished it from the prior art, lay in its "automatic selection, measurement and recording of the single, largest radius corresponding to the deepest pit encountered at each level of a well tubing being calipered"; that the element urged by defendants (appellants) as essential to the Chaney-Barnes invention, though not recited in the claims, was a spring and plug "centering device," but that the patent claims did not either expressly or impliedly include this element; that, even though desirable and advantageous in some respects, the centering device was neither a necessary nor essential element of the invention, since the patented device would operate effectively without it "to record the depths of the deepest pits encountered", the desired function of maintaining the device in a centered position during operation then being performed "by the feelers themselves"; that the admitted omission of the centering device in appellants' accused structures was, therefore, "immaterial to the issue of infringement", and since they otherwise revealed every essential element of the patent claims, functioning in combination in substantially the same way to effect substantially the same result, they constituted infringement thereof.[2] The court rejected appellants' special defenses of prior public use and intervening rights, as well as their re-

---

1. As will hereinafter be noted, the emphasized portions are important in considering the basic issues of validity and infringement of the patent in suit. The first italicized phrase of Claim 1 also appears verbatim in Claims 2, 3 and 4 of the patent. Those remaining claims also define substantially the same element described in the second italicized phrase, though in different words.

2. The district court found that appellants' infringement was willful and deliberate in character, though it declined in its discretion to assess treble damages.

liance upon a prior suit between the parties or their alleged privies as controlling in their favor,[3] holding that the prior Kinley Caliper uses in 1948 were experimental in nature and "were not public uses" such as would create intervening rights in favor of appellants, or otherwise restrict or limit the scope of the claims; finally, it held that the former suit relied upon by appellants was "without effect upon the issues herein involved."[4]

Though disavowing any intimation that "the Chaney-Barnes invention is inoperative or wholly lacking in utility", and even conceding that it "advanced the art" and solved the problem of "determining the depth of the deepest pit encountered", appellants nevertheless insist that the patent is invalid because the precise invention now claimed was abandoned by appellee during prosecution of the Chaney-Barnes patent application;[5] that, assuming validity, the district court was unjustified in according the Chaney-Barnes patent near pioneer status in its broad interpretation of the claims, particularly in view of the McMahan, Hardel and Kinley prior art patents[6] and uses; that the scope of appellee's monopoly under the Chaney-Barnes patent is necessarily limited by the specifications and language of the claims, as well as by the Patent Office file wrapper and the prior art[7] as a whole to a combination of known mechanical elements which include a "centering device" enabling the "feelers" to have that "independent lateral movement between said housing and the tube wall being calipered" described in the claims; that the district court clearly

3. The prior suit was brought in 1952 by the individual appellants, Myron and John Kinley, against appellee's licensee, Otis Pressure Control, Inc., in the United States District Court for the Northern District of Texas, Dallas Division (Civil Action No. 4510). In an apparently unreported decision, Judge Atwell held the McMahan prior art patent, which had been acquired by the Kinleys, valid and infringed by certain calipers then being manufactured by appellee's licensee, Otis Pressure Control, Inc.

4. In so holding, the court adopted the theory that the former litigation was not binding here, because the caliper of its licensee there held to infringe had a latch and release mechanism akin to the McMahan patent which is nowhere revealed in the Chaney-Barnes patent in suit.

5. See 35 U.S.C.A. § 31; 35 U.S.C.A. § 102 (Patent Codification Act of 1952). Appellants' defense here is allegedly based on the doctrines of late claiming and intervening rights set forth in Muncie Gear Works v. Outboard Marine & Mfg. Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171, and cases in accord. Relying principally upon that decision, and the alleged Kinley public use in 1948, appellants urge that appellee's delay in seeking its presently claimed monopoly for more than one year after such prior public and adverse commercial use invalidates the patent in suit. See Rosaire v. Baroid Sales Division, National Lead Co., 5 Cir., 218 F.2d 72.

6. Specifically, these are: McMahan patent No. 2,544,609; Hardel patent No. 1,337,955; and Kinley patent No. 2,102,080. Other prior art patents considered either by the Patent Office before issuance, or distinguished by the district court in its findings of validity and non-anticipation, are the Brandon electrical caliper No. 2,322,343; the tubing caliper patents to DeLeeuw No. 1,416,694 and Stark No. 2,121,614, found by the district court to be "entirely remote, structurally and functionally," from the Chaney-Barnes caliper; the Kinley and Gupton patent No. 2,267,110, and the Robidoux patent No. 2,340,987. Further prior art patents found ineffective to establish invalidity for anticipation because taken from the remote and non-analogous textile and shoe machinery arts are: Dennison No. 65,158, Vassar No. 212,288, Whitehead No. 284,585, Schaer No. 287,585, Falls No. 436,577, Falls No. 500,120, Nichols No. 841,809, Nichols No. 1,113,472, Stiggins No. 1,163,115, and Denne No. 1,651,588. Models of the McMahan, Hardel and Kinley prior art patented devices, as well as of the Chaney-Barnes patent in suit and appellants' devices held to infringe, have been furnished for our study and inspection, and their relative structure and mode of operation were ably demonstrated for our benefit by counsel upon the oral argument.

7. See and compare Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 219 F.2d 511, and Stewart-Warner Corp. v. Lone Star Gas Co., 5 Cir., 195 F.2d 645, 648.

erred in holding that the "feelers" of appellants' structures, which use no centering device, have such "independent lateral movement" within the meaning of the patent claims, and particularly in finding that "the omission of the centering spring and plunger in defendant's calipers * * * is immaterial to the issue of infringement"; that the district court further erred in finding that the desired function of centering the device could be just as effectively performed "by the feelers themselves", since the phrase "independent lateral movement between said housing and the tube wall", both as a matter of law and physics, impliedly limits the patented structure described to the use of a centering device; that, if the claims were properly construed by the district court as not being impliedly limited to a caliper using a centering device, they disclose no invention over the prior art and are invalid for anticipation by it; conversely, if they be properly construed as impliedly including the centering device, so as to attain validity over the prior art, they are then invalid for non-compliance with the statutory mandate that a patentee must "distinctly claim" his invention; that the claims are valid, if at all, only when narrowly construed, and are not infringed by appellants because their devices follow the teachings of the prior art, particularly the McMahan patent, and do not use the combination of the patent in suit because they do not employ a centering device or measure the depth of the deepest pit, and also because the "feelers springs" of their device do not use the relative spring strength called for by the Chaney-Barnes patent in suit.[8]

Appellee insists that each of the district court's findings of fact and conclusions of law on the basic issues of validity and infringement, as well as the special defenses of prior public use and late claiming, should be sustained as amply supported by the record; that, in any event, the trial court's decision is not clearly erroneous and appellants, by here asserting practically the same defenses as were urged in the trial court, are merely attempting to broaden the ordinary scope of appellate review and retry identical factual issues heretofore resolved against them upon substantial evidence. Specifically, appellee insists that appellants' reliance in its late claiming defense upon the Muncie Gear case, supra, is misplaced, since the patent there involved was held invalid because the untimely filed claims disclosed "new matter" not contained in the original application, whereas the Chaney-Barnes patent in suit continuously claimed substantially the same invention, and further because the decision was not primarily based upon intervening rights or any other form of equitable estoppel here urged by appellants; that the testimony fully supports the district court's findings of validity over the prior art, since the prior art calipers, such as McMahan, Hardel and DeLeeuw, either measured only average diameter rather than the deepest pit or, under the rule of Potts v. Creager, 155 U.S. 597, 606–608, 15 S.Ct. 194, 39 L.Ed. 275, may not fairly be viewed as anticipation because taken from non-analogous arts; that appellants' "centering device" and "weak feeler spring" defenses, heretofore summarized, represent merely an ingenious partisan attempt to read implied limitations into express language of otherwise clear and unambiguous claims which do not actually exist, and appellants may not, by resorting to such strained and abortive claim construction, thereby escape the consequences of their willful in-

8. This final contention of appellants involves the proper interpretation of the second heretofore quoted and italicized phrase in Claim 1 of the patent, supra, viz.: "means for constantly and independently urging the * * * feeler outwardly of said housing * * * with a force greater than" the stylus return spring, which element appellants claim is lacking in their devices because the "feeler springs" are supposedly too weak to measure the depth of the deepest pit in the manner of the Chaney-Barnes patent in suit.

fringement through manufacture and use of the accused devices, which reveal in combination substantially the same mechanical elements, functioning in substantially the same way, to accomplish substantially the same result.

Conceding the prior use statute's adoption of the general equitable principle, as set forth in the Muncie Gear case, supra, and elsewhere, Cf. Webster Electric Co. v. Splitdorf Co., 264 U.S. 463, 469, 44 S.Ct. 342, 68 L.Ed. 792, that a delay in claiming for more than the statutory period after adverse public use would ordinarily preclude the existence of a monopoly thus untimely asserted, we think the district court correctly held that, assuming a reasonable application of the doctrine of equivalents, there has been no material departure here between the monopoly asserted before the Patent Office and that presently claimed, nor any such unreasonable delay in claiming subsequent to the Kinley alleged public use, as would fairly justify invalidation of the patent claims in suit. Cf. Jeoffroy Mfg., Inc. v. Graham, 5 Cir., 219 F.2d 511; see Matthews v. Koolvent Metal Awning Co., 5 Cir., 158 F.2d 37, 40. We further agree that, as revealing the first practical patented device for measuring the depth of the deepest pits in well tubing, rather than merely the average depth of all corrosion pits encountered, the claims of the Chaney-Barnes patent are valid over the prior art. Robertson Rock Bit Co. v. Hughes Tool Co., 5 Cir., 176 F.2d 783, 789, 790. We think that neither the express language of the claims, nor the doctrine of equivalents, may be so narrowly circumscribed as to impose limitations and restrictions on the patent, such as are inherent in acceptance of appellants' "centering device" and "weak feeler spring" defenses, that appellee, by omitting any express reference thereto in claiming its monopoly, undoubtedly

sought to avoid. Cf. Southern States Equip. Corp. v. USCO Power Equip. Corp., 5 Cir., 209 F.2d 111, 121; Hughes v. Magnolia Petroleum Co., 5 Cir., 88 F.2d 817, 818. Moreover, in view of the structural and functional differences found to exist between the Otis caliper, held to infringe the McMahan prior art patent in the unreported Dallas suit, and the type caliper revealed by the present Chaney-Barnes patent here in dispute, we think the prior adjudication, if it has any bearing at all, is only remotely persuasive, and logically compels no result favorable to appellants here.

No useful purpose would be served by unduly lengthening this opinion with any further discussion of the divergencies in purpose, structure and modus operandi of the various prior art patents or the many authorities cited. As heretofore stated, on the basic issues of validity and infringement, as well as the special defenses of late claiming and intervening rights based on the alleged Kinley prior use, we find ourselves generally in agreement with the findings and conclusions adopted by the district court,[9] many of which have been heretofore summarized. In spite of appellants' contrary insistence, we agree with appellee's assertion that essentially only issues of fact were involved in its rejection of most of the asserted defenses, and that the ultimate determination of the controlling facts here was peculiarly for the district court, after hearing all of the disputed testimony, including that of the expert witnesses during more than nine days of trial. Furthermore, a review of appellants' contentions in the light of the testimony, the prior art, and the physical exhibits, has convinced us that they either assume facts not found, or conflict with contrary findings based on disputed testimony which may not fairly be set aside as "clearly erroneous". See Graver Tank & Mfg.

9. For a recent case upholding the district court's authority to adopt sua sponte, after independent consideration, that version of proposed findings of fact and conclusions of law submitted by both parties which fairly reflects the record and best accords with its conception of justice in the particular case, see Vincent v. Suni-Citrus Products Co., 5 Cir., 215 F.2d 305, 310–311.

Co. v. Linde Air Products Co., 336 U.S. 271, 274–275, 69 S.Ct. 535, 93 L.Ed. 672; Hazeltine Research v. Admiral Corp., 7 Cir., 183 F.2d 953, 955; Hunt v. Armour & Co., 7 Cir., 185 F.2d 722, 728; Rule 52(a), Fed.Rules Civ. Proc. 28 U.S.C.A.; Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 206 F.2d 772, 778–779; Southern States Equip. Corp. v. USCO Power Equip. Corp., supra, at page 120. For example, as a purely abstract proposition of mechanics there is undoubtedly a germ of truth in appellants' assertion and the testimony to the effect that an "off center shift" results from using the Chaney-Barnes patented structure without the centering device which prevents perfect accuracy in attaining the avowedly novel patent purpose of measuring the depth of the deepest pit encountered. But other witnesses for appellee, such as Fredd and Kelly, testified that this slight amount of theoretical off-center shift was so inconsequential as to be practically de minimis under ordinary operating conditions. [10] In fact, their testimony and the district court's find-

10. The witness Fredd testified:

"Q. Now, what was the result of that calculation as to offset or center shift that would be obtained under those assumptions? A. Under these assumptions with five feelers against a smooth cylindrical bore, the sixth feeler in a pit of one-tenth-inch in depth, the off center shift, the maximum value of off center shift that could be expected from the unbalance of forces would be thirty-three thousandths of an inch.

"Q. Did you make a similar calculation under exactly the same assumptions except for increasing the number of feelers from six to twelve? A. Yes, sir; we did.

"Q. And what was the result of that twelve-feeler calculation as to center offset? A. In connection with the twelve-feeler problem we assumed that eleven feelers would be against this smooth and uniform here, the twelfth feeler would be in a pit of the depth of one-tenth of an inch, the maximum possible calculated off center shift that could occur due to the imbalance of forces created by the one feeler moving into the pit had a value of seventeen thousandths of an inch.

"Q. Did you make a similar calculation for eighteen feelers with seventeen feelers retained by the tube wall and the eighteenth feeler moving in a pit one-tenth of an inch deep? A. Yes; we did.

"Q. What was the result of that calculation? A. This calculation showed that the maximum possible off center shift under these conditions was eleven thousandths of an inch.

"Q. Now, taking exactly the same conditions, the seventeen feelers retained by the smooth wall and the eighteenth feeler in a pit, but this time the pit is only five thousandths of an inch deep. Did you make this calculation, and if so, what was the result? A. Yes; we did. The answer was the off center shift could not exceed four hundred fifty millionths of an inch.

"Q. And that figure of four hundred fifty millionths of an inch is less than one-half of one thousandths of an inch; is that correct? A. That is correct.

"Q. Could you give us a simple illustration of one one-thousandths of an inch? A. An illustration would be the cellophane that is used to wrap cigarette packages. This value is less than one-half of that thickness."

Kelly further testified:

"Q. * * * When the Otis Caliper goes through bent or crooked tubing and is deflected by the wall of the tubing, what is the maximum possible off center movement of the caliper? A. * * * The difference in the diameter of the outside of the housing of the Otis caliper and the internal diameter of the tubing is three-eighths of an inch. That means it will be possible for the Otis caliper to move off center not more than three-sixteenths of an inch.

"Q. And that would be the most extreme off center movement that could be obtained under the most extreme conditions? A. It would not be possible to put the caliper in two-inch tubing and get it off center more than three-sixteenths.

"Q. What about the Tuboscope caliper? A. I believe the Tuboscope caliper outside diameter is one and three-quarters inches, which means it will be possible to deflect the Tuboscope caliper off center not more than one-eighth of an inch.

"Q. What about the effect of the drive wheel and centering wheel—I mean the drive wheel and back-up wheel in these calipers? What practical effect in the field do they have for centering the instrument? A. For all practical purposes that back-up post and drive wheel in the Tuboscope instrument represents a centering device which holds that caliper centered in the tubing."

ings as to the ability of the spring feelers to maintain the caliper in a substantially centered position in the absence of the centering device are supported by other testimony that the importance of a centering device is diminished as the number of feelers used increases, and also by the similarity between the field records produced by the Chaney-Barnes type caliper and those used by appellants which were held to infringe. Finally, we think appellants' contention, purportedly based on the second italicized portion of the claim, that it does not infringe because of its use of weaker feeler springs than those called for by the patent in suit, is effectively refuted by testimony supporting the trial court's finding that this language may not fairly be construed as a limitation of the claims which avoids infringement, but is largely a variable factor of optional engineering design.

It follows that the district court properly held the Chaney-Barnes patent in suit valid and infringed, and the judgment is accordingly

Affirmed.